Haslem *v.* Lockwood.

---

## THOMAS HASLEM *vs.* WILLIAM A. LOCKWOOD.

Manure which had accumulated in a frequented place in a public street of a borough, where the fee of the street belonged to the borough, was raked into heaps by the plaintiff in the evening, and left in that condition, to be carried away by him the next evening. . During the forenoon of the next day the defendant, finding the manure in heaps, loaded it into his cart and carried it away. In an action of trover brought by the plaintiff for the value of the manure it was held—

1. That the manure was not to be regarded as so incorporated with the soil as to be real estate, but was personal property.

2. That it belonged originally to the owners of the animals that dropped it, but was to be regarded as abandoned by them.

3. That being abandoned property the first occupant who took it would have a right to appropriate it.

4. That after the plaintiff had added materially to its value by his labor in raking it into heaps, he was to be regarded as entitled to it against any person having no title.

5. That he was to be allowed a reasonable time to take it away.

6. That twenty-fours hours, the time allowed by statute for the removal of seaweed gathered into heaps, was not an unreasonable time to be allowed in such a case.

TROVER, for a quantity of manure ; brought before a justice of the peace and appealed by the defendant to the Court of Common Pleas for the county of Fairfield, and tried in that court, on the general issue closed to the court, before *Brewster, J.*

On the trial it was proved that the plaintiff employed two men to gather into heaps, on the evening of April 6th, 1869, some manure that lay scattered along the side of a public highway, for several rods, in the borough of Stamford, intending to remove the same to his own land the next evening. The men began to scrape the manure into heaps at six o'clock in the evening, and after gathering eighteen heaps, or about six cart-loads, left the same at eight o'clock in the evening in the street. The heaps consisted chiefly of manure made by horses hitched to the railing of the public park in, and belonging to, the borough of Stamford, and was all gathered between the center of the highway and the park ; the rest of the heaps consisting of dirt, straw and the ordinary scrap-

ings of highways. The defendant on the next morning, see-
ing the heaps, endeavored without success to ascertain who
had made them, and inquired of the warden of the borough
if he had given permission to any one to remove them, and
ascertained from him that he had not. He thereupon, before
noon on that day, removed the heaps, and also the rest of the
manure scattered along the side of the highway adjacent to
the park, to his own land.

The plaintiff and defendant both claimed to have received
authority from the warden to remove the manure before the
6th of April, but in fact neither had any legal authority from
the warden, or from any officer of the borough or of the town.
The borough of Stamford was the sole adjoining proprietor
of the land on which the manure lay scattered before it was
gathered by the plaintiff. No notice was left on the heaps or
near by, by the plaintiff or his workmen, to indicate who had
gathered them, nor had the plaintiff or his workmen any
actual possession of the heaps after eight o'clock in the even-
ing on the 6th of April.

Neither the plaintiff while gathering, nor the defendant
while removing the heaps, was interfered with or opposed by
any one. The removal of the manure and scrapings was
calculated to improve the appearance and health of the bor-
ough. The six loads were worth one dollar per load. The
plaintiff, on ascertaining that the defendant had removed the
manure, demanded payment for the same, which the defendant
refused. Neither the plaintiff nor defendant owned any land
adjacent to the place where the manure lay. The highway
was kept in repair by the town of Stamford.

On the above facts the plaintiff claimed, and prayed the
court to rule, that the manure was personal property which
had been abandoned by its owners and became by such aban-
donment the property of the first person who should take
possession of the same, which the plaintiff had done by gath-
ering it into heaps, and that it was not and never had been
a part of the real estate of the borough or of any one else
who might be regarded as owning the fee of the soil. He
further claimed that if it was a part of the real estate, it was

taken without committing a trespass, and with the tacit consent of the owners of such real estate, and that thereby it became his personal property of which he was lawfully possessed, and at least that he had acquired such an interest in it as would enable him to hold it against any person except the owner of the land or some person claiming under the owner.

The defendant claimed, upon the above facts, that the manure being dropped upon and spread out over the surface of the earth was a part of the real estate, and belonged to the owner of the fee, subject to the public easement; that the fee was either in the borough of Stamford or the town of Stamford, or in the parties who owned the lands adjacent; that therefore the scraping up of the manure, mixed with the soil, if real estate, did not change its nature to that of personal estate, unless it was removed, whether the plaintiff had the consent of the owner of the fee or not; and that, unless the heaps became personal property, the plaintiff could not maintain his action. The defendant further claimed, as matter of law, that if the manure was always personal estate, or became personal estate after being scraped up into heaps, the plaintiff, by leaving it from eight o'clock in the evening until noon the next day, abandoned all right of possession which he might have had, and could not, therefore, maintain his action.

The court ruled adversely to the claims of the plaintiff and held that on the facts proved the plaintiff had not made out a sufficient interest in, or right of possession to, the subject matter in dispute, to authorize a recovery in the suit, and rendered judgment for the defendant.

The plaintiff moved for a new trial for error in this ruling of the court.

*Curtis* and *Hoyt*, in support of the motion.

1. The manure in question was personal property abandoned by its owners. 2 Bla. Com., 387, 402; 2 Kent Com., 356.

2. It never became a part of the real estate on which it was abandoned. 2 Smith Lead. Cas., 252, 258; 1 Washb. R.

Prop., bk. 1, ch. 10, sec. 11, § 6. *Parsons* v. *Camp*, 11 Conn., 525; *Needham* v. *Allison*, 4 Fost., 355; *Plumer* v. *Plumer*, 10 id., 558.

3. It being personal property abandoned by its owners, and lying upon the highway, and neither the owners of the fee nor the proper authorities of the town and borough having by any act of theirs shown any intention to appropriate the same, it became lawful for the plaintiff to gather it up and remove it from the highway, providing he did not commit a trespass, and removed it without objection · from the owners of the land. *Church* v. *Meeker*, 34 Conn., 421. And no trespass was in fact committed. No person interfered with the plaintiff or made any objection. This court cannot presume a trespass to have been committed. 1 Greenl. Ev., § 34; 1 Swift Dig., 173.

4. But if the manure had become a part of the real estate, yet when it was gathered into heaps by the plaintiff it was severed from the realty and became personal estate. 1 Swift Dig., 534; Bouvier Law Dict., "Real Property." And being gathered without molestation from any person owning or claiming to own the land, it is to be considered as having been taken by the tacit consent of such owner. *Martin* v. *Houghton*, 45 Barb., 258.

5. The plaintiff therefore acquired not only a valid legal possession, but a title by occupancy, and by having expended labor and money upon the property. Such a title is a good legal title against every person but the true owner.

6. If the plaintiff had a legal title then he had the constructive possession. If he had legal possession, and only left the property for a short time intending to return and take it away, then he might maintain an action against a wrong doer for taking it away. 1 Swift Dig., 530; 1 Smith Lead. Cas., 473; *Bird* v. *Clark*, 3 Day, 272; *Williams* v. *Dolbeare*, id., 498; *Bulkeley* v. *Dolbeare*, 7 Conn., 232; *Heath* v. *Milward*, 2 Bing., N. C., 98. The leaving of property for a short time, intending to return, does not constitute an abandonment. The property is still to be considered as in the possession of the plaintiff.

*Olmstead,* contra.

1. The manure mixed with the dirt and ordinary scrapings of the highway, being spread out over the surface of the highway, was a part of the *real estate,* and belonged to the owner of the fee, subject to the public easement. 1 Swift Dig., 107; *Emans* v. *Turnbull,* 2 Johns., 322; *Fay* v. *Muzzey,* 13 Gray, 53; *Goodrich* v. *Jones,* 2 Hill, 142; *Daniels* v. *Pond,* 2 Pick., 367; *Parsons* v. *Camp,* 11 Conn., 525; 1 Wms. Exrs., 615.

2. The scraping up of the manure and dirt into piles, if the same was a part of the real estate, did not change its nature to that of *personal property,* unless there was a severance of it from the realty by removal, (which there was not), whether the plaintiff had the consent of the owner of the fee or not, which consent it is conceded the plaintiff did not have.

3. Unless the scraping up of the heaps made their substance *personal property,* the plaintiff could not maintain his action either for trespass or trespass on the case.

4. In trespass *de bonis asportatis,* or trover, the plaintiff must have had the *actual possession,* or a right to the immediate possession, in order to recover. 1 Hilliard on Torts. ch. 18, § 8.

5. If the manure was always personal estate, it being spread upon the surface of the earth, it was in possession of the owner of the fee, who was not the plaintiff. *Church* v. *Meeker,* 34 Conn., 432; 1 Swift Dig., 107. The scraping of it into heaps, unless it was removed, would not change the *possession* from the owner of the fee to the plaintiff. The plaintiff therefore never had the *possession.*

6. If the heaps were personal property the plaintiff never had any right in the property, but only *mere possession,* if anything, which he abandoned by leaving the same upon the public highway from 8 o'clock in the evening until 12 o'clock the next day, without leaving any notice on or about the property, or any one to exercise control over the same in his behalf. 2 Hilliard on Torts, ch. 18, § 19, note *c*; id., ch. 18, § 14; *Church* v. *Meeker,* supra.

PARK, J. We think the manure scattered upon the ground, under the circumstances of this case, was personal property. The cases referred to by the defendant to show that it was real estate are not in point. The principle of those cases is, that manure made in the usual course of husbandry upon a farm is so attached to and connected with the realty that, in the absence of any express stipulation to the contrary, it becomes appurtenant to it. The principle was established for the benefit of agriculture. It found its origin in the fact that it is essential to the successful cultivation of a farm that the manure, produced from the droppings of cattle and swine fed upon the products of the farm, and composted with earth and vegetable matter taken from the land, should be used to supply the drain made upon the soil in the production of crops, which otherwise would become impoverished and barren; and in the fact that manure so produced is generally regarded by farmers in this country as a part of the realty and has been so treated by landlords and tenants from time immemorial. *Daniels* v. *Pond*, 21 Pick., 367 ; *Lewis* v. *Lyman*, 22 Pick., 437 ; *Kittredge* v. *Woods*, 3 N. Hamp., 503 ; *Lassell* v. *Reed*, 6 Greenl., 222 ; *Parsons* v. *Camp*, 11 Conn., 525 ; *Fay* v. *Muzzy*, 13 Gray, 53 ; *Goodrich* v. *Jones*, 2 Hill, 142 ; 1 Washb. on Real Prop., 5, 6.

But this principle does not apply to-the droppings of animals driven by travelers upon the highway. The highway is not used, and cannot be used, for the purpose of agriculture. The manure is of no benefit whatsoever to it, but on the contrary is a detriment ; and in cities and large villages it becomes a nuisance, and is removed by public officers at public expense. The finding in this case is, " that the removal of the manure and scrapings was calculated to improve the appearance and health of the borough." It is therefore evident that the cases relied upon by the defendant have no application to the case.

But it is said that if the manure was personal property, it was in the possession of the owner of the fee, and the scraping it into heaps by the plaintiff did not change the posses sion, but it continued as before, and that therefore the plain-

tiff cannot recover, for he neither had the possession nor the right to the immediate possession.

The manure originally belonged to the travelers whose animals dropped it, but it being worthless to them was immediately abandoned; and whether it then became the property of the borough of Stamford which owned the fee of the land on which the manure lay, it is unnecessary to determine; for, if it did, the case finds that the removal of the filth would be an improvement to the borough, and no objection was made by any one to the use that the plaintiff attempted to make of it. Considering the character of such accumulations upon highways in cities and villages, and the light in which they are everywhere regarded in closely settled communities, we cannot believe that the borough in this instance would have had any objection to the act of the plaintiff in removing a nuisance that affected the public health and the appearance of the streets. At all events, we think the facts of the case show a sufficient right in the plaintiff to the immediate possession of the property as against a mere wrong doer.

The defendant appears before the court in no enviable light. He does not pretend that he had a right to the manure, even when scattered upon the highway, superior to that of the plaintiff; but after the plaintiff had changed its original condition and greatly enhanced its value by his labor, he seized and appropriated to his own use the fruits of the plaintiff's outlay, and now seeks immunity from responsibility on the ground that the plaintiff was a wrong doer as well as himself. The conduct of the defendant is in keeping with his claim, and neither commends itself to the favorable consideration of the court. The plaintiff had the peaceable and quiet possession of the property; and we deem this sufficient until the borough of Stamford shall make complaint.

It is further claimed that if the plaintiff had a right to the property by virtue of occupancy, he lost the right when he ceased to retain the actual possession of the manure after scraping it into heaps.

We do not question the general doctrine, that where the right by occupancy exists, it exists no longer than the party

Haslem *v.* Lockwood.

retains the actual possession of the property, or till he appropriates it to his own use by removing it to some other place. If he leaves the property at the place where it was discovered, and does nothing whatsoever to enhance its value or change its nature, his right by occupancy is unquestionably gone. But the question is, if a party finds property comparatively worthless, as the plaintiff found the property in question, owing to its scattered condition upon the highway, and greatly increases its value by his labor and expense, does he lose his right if he leaves it a reasonable time to procure the means to take it away, when such means are necessary for its removal?

Suppose a teamster with a load of grain, while traveling the highway, discovers a rent in one of his bags, and finds that his grain is scattered upon the road for the distance of a mile. He considers the labor of collecting his corn of more value than the property itself, and he therefore abandons it, and pursues his way. *A* afterwards finds the grain in this condition and gathers it kernel by kernel into heaps by the side of the road, and leaves it a reasonable time to procure the means necessary for its removal. While he is gone for his bag, *B* discovers the grain thus conveniently collected in heaps and appropriates it to his own use. Has *A* any remedy? If he has not, the law in this instance is open to just reproach. We think under such circumstances *A* would have a reasonable time to remove the property, and during such reasonable time his right to it would be protected. If this is so, then the principle applies to the case under consideration.

A reasonable time for the removal of this manure had not elapsed when the defendant seized and converted it to his own use. The statute regulating the rights of parties in the gathering of sea-weed, gives the party who heaps it upon a public beach twenty-four hours in which to remove it, and that length of time for the removal of the property we think would not be unreasonable in most cases like the present one.

We therefore advise the Court of Common Pleas to grant a new trial.

In this opinion the other judges concurred.