PICKERING *v.* MOORE.

Manure made on a farm from fodder not produced thereon is not a part of the realty.

The intermixture of one's property with another's of the same kind, quality, and value, without the other's consent, but with no wrongful intent, does not change the ownership.

A tenant in common of goods of the same kind, quality, and value, so as to be divisible by tale, measure, or weight, has a right to take his share, and his co-tenant who prevents it is guilty of a conversion.

TROVER, for manure.  Facts found by the court.   March 31, 1883, the defendant leased his farm for the term of three years to the plaintiff, who covenanted to carry on the place in a "husbandlike manner," and to consume and convert into manure, to be used or left upon the premises, all hay and fodder raised thereon.   The plaintiff occupied the farm and performed all his covenants contained in the lease, without any new or further contract, until May 30, 1892.   During the last year of his occupancy he fed out upon the farm a large quantity of fodder not produced on the place. He put twenty-five cords of the manure made from this fodder, and manure of the same quality and value made from fodder raised on the place, together, in a heap, where they were so intermixed that they could not be distinguished.   The defendant prevented him from taking away the twenty-five cords.

*Leach & Stevens*, for the plaintiff.

*Albin & Martin*, for the defendant.

CARPENTER, J.  The plaintiff held the farm after the expiration of three years, as tenant from year to year, upon the terms

expressed in the lease. *Russell* v. *Fabyan*, 34 N. H. 218, 223 : *Conway* v. *Starkweather*, 1 Denio 113. Manure made upon a farm by the consumption of its products in the ordinary course of husbandry is a part of the realty. It cannot be sold or carried away by a tenant without the landlord's consent. *Sawyer* v. *Twiss*, 26 N. H. 345, 349; *Perry* v. *Carr*, 44 N. H. 118, 120; *Hill* v. *De Rochemont*, 48 N. H. 87, 88. The doctrine "was established for the benefit of agriculture. It found its origin in the fact that it is essential to the successful cultivation of a farm that the manure produced from the droppings of cattle and swine fed upon the products of the farm, and composted with earth and vegetable matter taken from the land, should be used to supply the drain made upon the soil in the production of crops, which otherwise would become impoverished and barren; and in the fact that the manure so produced is generally regarded by farmers in this country as a part of the realty, and has been so treated by landlords and tenants from time immemorial." *Haslem* v. *Lockwood*, 37 Conn. 500, 505.

Whether a tenant, "where there is no positive agreement dispensing with the engagement to cultivate his farm in a husbandlike manner, is bound to spend the hay and other like produce upon it as the means of preserving and continuing its capacity" (*Perry* v. *Carr* and *Hill* v. *DeRochemont, supra*), in other words, whether the express or implied obligation to cultivate the farm in "a husbandlike manner" binds him as matter of law to convert into manure all the fodder grown on the premises, is a different and possibly an open question. *Wing* v. *Gray*, 36 Vt. 261, 266, 267; *Lewis* v. *Lyman*, 22 Pick. 437, 444, 445; *Middlebrook* v. *Corwin*, 15 Wend. 169, and cases cited. *Brown* v *Crump*, 1 Marsh C. P. 5●; *Legh* v. *Hewitt*, 4 East 154, 159; *Moulton* v. *Robinson*, 27 N. H. 550, 561; Cool. Torts 334, 343, 344. However that may be, no rule of good husbandry requires a tenant to buy hay or other fodder for consumption on the farm. If, in addition to the stock maintainable from its products, he keeps cattle for hire and feeds them upon fodder procured by purchase or raised by him on other lands, the landlord has no more legal or equitable interest in the manure so produced than he has in the fodder before it is consumed. It is not made in the ordinary course of husbandry. It is produced "in a manner substantially like making it in a livery stable." *Hill* v. *DeRochemont*, 48 N. H. 87, 90; *Corey* v. *Bishop*, 48 N. H. 146, 148. It is immaterial whether the additional stock is kept for hire, or is the tenant's property. *Needham* v. *Allison*, 24 N. H. 355.

The plaintiff did not lose his property in the manure by intermixing it with the defendant's manure of the same quality and value without his consent. It is not claimed that the plaintiff mixed the manure with any fraudulent or wrongful intent. "The intentional and innocent intermixture of property of substantially

the same quality and value does not change the ownership. And no one has a right to take the whole, but in so doing commits a trespass on the other owner. He should notify him to make a division, or take his own proportion at his peril, taking care to leave to the other owner as much as belonged to him." *Ryder* v. *Hathaway*, 21 Pick. 298, 306; *Gilman* v. *Hill*, 36 N. H. 311, 323; *Robinson* v. *Holt*, 39 N. H. 557, 563; *Moore* v. *Bowman*, 47 N. H. 494, 501, 502; *Cheshire Railroad* v. *Foster*, 51 N. H. 490, 493. " Even if the commingling were malicious or fraudulent, a rule of law which would take from the wrongdoer the whole, when to restore to the other his proportion would do him full justice, would be a rule not in harmony with the general rules of civil remedy, not only because it would award to one party a redress beyond his loss, but because it would compel the other party to pay not damages, but a penalty." Cool. Torts 53, 54.

Whether the parties were tenants in common of the manure is a question that need not be determined. *Gardner* v. *Dutch*, 9 Mass. 427, 430, 431; *Ryder* v. *Hathaway*, 21 Pick. 298, 305; *Chapman* v. *Shepard*, 39 Conn. 413, 425; *Kimberly* v. *Patchin*, 19 N. Y. 330, 341. Assuming that they were, the action may be maintained. A tenant in common has the same right to the use and enjoyment of the common property that he has to his sole property, except in so far as it is limited by the equal right of his co-tenants. Where two have each an equal title to an indivisible chattel, " as of a horse an oxe or a cowe," neither, without actual and exclusive possession of the chattel, can enjoy his moiety. Simultaneous enjoyment by each of his equal right is impossible. Hence, neither can lawfully take it from the possession of the other. The one excluded from possession has no legal remedy except to take it " when he can see his time." Lit., s. 323; *South-worth* v. *Smith*, 27 Conn. 355, 359.

A tenant in common of personal as well as real property has a right to partition if partition is possible, and if not, to a regulation of its use equivalent to partition or to a sale. Co. Lit. 164 b, 165 a; *Stoughton* v. *Leigh*, 1 Taunt. 402, 411, 412; *Morrill* v. *Morrill*, 5 N. H. 134, 135; *Crowell* v. *Woodbury*, 52 N. H. 613. On partition he is entitled to no particular part of the property, but only to his due proportion in value and quality of the whole. When it consists of chattels differing in quality and value, an appraisal of the value and a consideration of the qualities of the several chattels are essential to an assignment to each of his just share. In this case, as in that of a single indivisible chattel, if the parties cannot agree upon the use, sale, or division, judicial intervention is necessary. Until an adjudication of their rights, neither can assert a title in severalty to any portion of the property. When the common property is divisible by weight, measure, or number into portions identical in quality and value, as corn and various other articles, a different case is presented.

There is no question of legal or equitable right. There is and can be no dispute that a 'court of law or equity can settle. Counting, weighing, and measuring are not judicial, but ministerial functions. Equity could do no more than decree that each might take so many pounds, bushels, or yards, or so many of the articles in number, and enforce its decree by process, in other words, enforce the conceded right. One may in general do without a decree what equity would decree that he might do. Neither law nor equity allows one in the exercise of his own rights to do an unnecessary and avoidable injury to another. One is ·entitled to the possession of the whole in those cases only where it is necessary to his enjoyment of his moiety. Here it is not necessary. There is no more difficulty in separating one portion from another, than there is in selecting A's marked sheep from B's flock. Either may make the division. The law is not so unreasonable as to compel a resort to the courts in order to obtain a partition which either may make without expense and without danger of injustice to his co-tenant. Except.in *Daniels* v. *Brown,* 34 N. H. 454, it has never been held, so far as observed, that a tenant in common is liable to his co-tenant in any form of proceeding for taking from the latter's possession and consuming or destroying his just proportion only of the common property. The conveyance by a tenant in common of a part of the common land by metes and bounds may effect a partition, and will if it does no injustice to his co-tenants,—if their just share can be assigned to them out of the remaining land. *Holbrook* v. *Bowman,* 62 N. H. 313, 321. No reason is perceived why a similar doctrine should not be applied in the case of a common tenancy of chattels. If A and B own in common 100 horses, and B sells 10 of them to C, why should A be permitted to take them " when he can see his time," if he has possession of and can have his full share assigned to him from the remaining 90 ? However that may be, a tenant in common of goods divisible by tale or measure may, without the consent and against the will of his co-tenant, rightfully take and appropriate to his sole use, sell, or destroy so much of them as he pleases, not exceeding his share, and by so doing effect *pro tanto* a valid partition. To this extent *Daniels* v. *Brown, supra,* is overruled. *Haley* v. *Colcord,* 59 N. H. 7, 8 ; *Gage* v. *Gage,* 66 N. H. 282, 288 ; *Seldon* v. *Hickock,* 2 Cai. 166 ; *Lobdell* v. *Stowell,* 51 N. Y. 70, and cases cited; *Stall* v. *Wilbur,* 77 N. Y. 158, 164; Cool. Torts 455 ; 6 Am. Law Rev. 455–459, and cases cited. The defendant, by preventing the plaintiff from taking his part of the manure, exercised a dominion over it inconsistent with the plaintiff's rights. *Evans* v. *Mason,* 64 N. H. 98.

*Judgment for the plaintiff.*

WALLACE, J., did not sit : the others concurred.