## TAYLOR *v.* NEWCOMB.

LANDLORD AND TENANT—RIGHT TO MANURE.

The owner of a farm sold it, and leased the barns and barnyards thereon of his grantee. At the time of the sale there was a quantity of hay and straw in the barns belonging to the grantor, which he fed to his stock on the leased premises after the sale. *Held,* that the manure made on such premises was personal property belonging to the lessee, as manure is only a part of the realty when it results from a consumption of the product grown thereon.

Appeal from Montcalm; Davis, J. Submitted February 7, 1900. Decided April 24, 1900.

Bill by Henrietta W. Taylor against Solomon B. Newcomb, John Banfield, and another, to enjoin the removal of

manure from leased premises. From a decree dismissing the bill, complainant appeals. Affirmed.

*William O. Webster*, for complainant.

*Frank A. Miller*, for defendants.

Montgomery, C. J. On the 13th of November, 1894, the defendant Newcomb conveyed to complainant a farm consisting of 80 acres in the township of Pierson, Montcalm county. On the same day a lease in the following words was given back to Newcomb:

"It is hereby contracted and agreed by and between Fred F. Taylor, of the first part, and Solomon B. Newcomb, of the second part, that in consideration of one dollar and other valuable consideration, the receipt whereof is hereby confessed and acknowledged, that the said first party leases to the second party the use of the buildings, well, windmill, yard, and barnyard on the north ½ of northeast ¼, section 28, town 11 north, range 10 west, of Michigan, from the date hereof to the first day of April, A. D. 1895, and all the pasture on said land until the winter of 1894–5 sets in."

On the date of this transaction, defendant Newcomb had stored in the barn a quantity of hay, cornstalks, and straw. During the winter following he made a quantity of manure by feeding such fodder to his stock, the manure remaining and being housed in the barn and on the premises. In June, 1895, defendant Newcomb sold this manure to defendant Banfield, and the present bill is filed to enjoin its removal from the premises. From a decree dismissing the bill, complainant appeals.

The great weight of authority in this country sustains the rule that, as between landlord and tenant, manure made on the farm by the cattle of the lessee, which is made from the products of the farm, and as a result of the consumption of its produce thereon, becomes a part of the realty. Tyler, Fixt. 356; 1 Washb. Real Prop. *5; *Kittredge* v. *Woods*, 3 N. H. 503 (14 Am. Dec. 393); *Lassell* v. *Reed*, 6 Greenl. 222; *Middlebrook* v. *Corwin*,

15 Wend. 169; *Daniels* v. *Pond*, 21 Pick. 371 (32 Am. Dec. 269). The rule as stated in Tyler on Fixtures is as follows:

"The rule of law, therefore, may be safely declared that manure made upon a farm, or gathered in therefrom, and produced mainly by the feeding and depasturing of sheep, cattle, and horses on its succulent vegetables and grasses, or other products of the farm, in the absence of any stipulation or custom to the contrary, belongs to the farm, and cannot be legally removed therefrom by the tenant. But if the manure were not produced directly or indirectly from the land, and were in no sense the product of agricultural demised premises,—such as accumulates in livery stables and the like,—it is no part of the realty, and may be removed by the tenant at the close of his term."

Defendants' counsel does not controvert this general rule, but contends that in this case the manure never became a part of the realty, for the reason that, on the sale of the land to complainant, the straw, hay, and cornstalks remained the property of defendant Newcomb, to do with as he pleased; that he might have removed them from the premises without let or hindrance; that the manure was not produced, directly or indirectly, from the land while the defendant Newcomb was tenant of complainant. The circuit judge adopted this view, and we think he is sustained by the logic of the cases. It is held in numerous cases that, where the manure is made, not from the products of the farm, but substantially like making it in a livery stable, the tenant is entitled to it. *Needham* v. *Allison*, 24 N. H. 355; *Fletcher* v. *Herring*, 112 Mass. 382. In the case of *Pickering* v. *Moore*, 67 N. H. 533 (32 Atl. 828, 31 L. R. A. 698, 68 Am. St. Rep. 695), it was said by Carpenter, J.:

"No rule of good husbandry requires the tenant to buy hay or other fodder for consumption on the farm. If, in addition to the stock maintainable from its products, he keeps cattle for hire, and feeds them upon fodder procured by purchase or raised by him on other lands, the landlord has no more legal or equitable interest in the manure so produced than he has in the fodder before it is consumed.

It is not made in the ordinary course of husbandry; it is produced in a manner substantially like making it in a livery stable."

In the present case complainant had no interest in the fodder which was fed out by defendant Newcomb. Her rights in it were not in any way different than they would have been in fodder purchased by the tenant. When the manure was made, the rights of the defendant Newcomb were those of a tenant in the buildings only. His rights to pasturage terminated when winter set in. The manure was produced substantially like making it in a livery stable. See, further, *Gallagher* v. *Shipley*, 24 Md. 418 (87 Am. Dec. 611).

It should be stated that the record shows that there was no manure on the premises when sold. The right of a purchaser to the manure accumulated on agricultural lands is, therefore, in no way involved.

Decree is affirmed, with costs.

The other Justices concurred.