[Civil No. 3754.  Filed December 7, 1936.]

[62 Pac. (2d) 1318.]

# T. D. TWAY, Appellant, v. SOUTHERN METHODIST HOSPITAL AND SANITORIUM OF TUCSON, a Corporation, Appellee.

Mr. John W. Ross, for Appellant.

Mr. Joseph B. Judge and Mr. L. J. Cox, for Appellee.

LOCKWOOD, C. J.—T. D. Tway, hereinafter called plaintiff, brought suit against Oscar Richey, as executor of the last will and testament of M. Irene Ackerman, deceased, hereinafter called defendant, to compel the latter to approve a claim against the estate of deceased, based on a certain promissory note executed by her. The Southern Methodist Hospital and Sanitorium of Tucson, a corporation, hereinafter called intervener, appeared in the suit, claiming that it was the owner of the note in question, and asking that the executor be required to approve its claim against the estate of the deceased, based on the note. The defendant answered, admitting the execution of the note by the deceased, and that he had funds in his hands sufficient to pay it, but stated that he did not know to whom it was due and, therefore, paid the money into court pending the adjudication of the controversy. The case was tried to the court sitting without a jury, and findings of fact and conclusions of law were filed,

and a judgment based thereon rendered in favor of intervener, whereupon this appeal was taken.

The facts necessary for a determination of the appeal as, under the judgment of the court, we must assume them to exist may be stated as follows: The intervener is a corporation which, for many years, has operated a hospital and sanitorium in Tucson. During all of its operations the only persons authorized to sign contracts binding upon it, except those immediately required for the current operation of the hospital, were its president and secretary, and these two only when duly authorized by its executive committee. During the year 1932, and for some time previous thereto, one D. D. Dechard was the superintendent, in active charge of the operation of its hospital, while plaintiff was a bookkeeper in the hospital. W. T. Dudgeon was secretary of the corporation, and L. J. Cox was its president. During the latter part of the year 1932, deceased was an inmate of the hospital, and owed it for services about $140. She had a certain amount of property tied up in trust, from which she received only a small income, so that she was unable to pay the bill. After some discussion with the various members of the staff of the institution, including plaintiff, Mrs. Ackerman executed the note in question in favor of the intervener. It was noninterest bearing and payable at her death, at which time her trust property would be available for such purpose and, according to her statement at the time, the surplus over the amount which she owed the intervener was to be used as a fund for the benefit of subsequent patients. In the latter part of December, 1932, plaintiff was about to sever his connection with the hospital. According to the books kept by him, intervener was then indebted to him for services in the sum of $554, but was embarrassed financially, and Dechard suggested that he might accept the Acker-

man note at its face value, in part payment of the indebtedness. After some consideration, he agreed to do so, and Dechard wrote an assignment of the note on its back and, in company with plaintiff, went to Dudgeon and explained the circumstances, asking him to sign the assignment and put the seal of intervener thereon. Dudgeon, in the presence of plaintiff, agreed to do so, and then delivered the note to Dechard with the positive instruction that it was not to be turned over to plaintiff until it had been signed by the president of the corporation, Cox, who at that time was in Phoenix. Notwithstanding this positive instruction on the part of Dudgeon, Dechard shortly thereafter delivered the note to plaintiff, and never notified Cox nor the executive committee of his actions.

In the early part of June, 1933, Mrs. Ackerman passed away, and her estate was duly administered in the Superior Court of Pima county. Plaintiff filed a claim on the note against the estate and then, for the first time, Cox and the executive committee learned that the note had been assigned in the manner set forth above. Cox immediately wrote defendant, protesting against the allowance of plaintiff's claim, and stating that intervener would file a claim based on the note, which was promptly done. The matter was discussed between counsel for the parties, and the executor finally rejected both claims, and suit was brought in the manner provided by statute under such circumstances by plaintiff, the corporation intervening.

We are satisfied, after a careful examination of the reporter's transcript, that there is evidence which would sustain the trial court in finding the foregoing facts and we are, therefore, bound thereby. The sole question for our consideration is whether, upon these facts, the trial court correctly rendered judgment in favor of the intervener.

494

■ There are some eight assignments of error grouped under four propositions of law, which propositions we will consider as seems advisable. The first is that since the note was a regular negotiable note on its face and plaintiff was the holder for value thereof, he was entitled to the proceeds thereof, even though it had been transferred and delivered to him without a proper indorsement. In support of this contention, he cites sections 2359, 2373, and 2376, Revised Code of 1928. Apparently the particular section which plaintiff contends governs the situation is 2373, which reads as follows:

"*Transfer without indorsement; effect.* Where the holder of an instrument payable to his order transfers it for value without indorsing it, the transfer vests in the transferee such title as the transferrer had therein, and the transferee acquires, in addition, the right to have the indorsement of the transferrer. For the purpose of determining whether the transferee is a holder in due course, the negotiation takes effect as of the time when the indorsement is actually made."

We think it clear the section is not applicable to the present situation. While it does not expressly so state, it is obvious it implies that the transfer referred to in the section is made by the person who has a right to make it, but who has merely failed to put a formal indorsement on the note. If the note is merely handed over to the transferee by someone not the holder of the legal title thereto, it cannot be supposed that the legislature intended this would transfer the title. The real issue, when a transfer without indorsement is in question, is, Did the person who transferred for value have the *right* to transfer it? In this case, the holder was a corporation, and the very gist of intervener's position is not only that it did not formally indorse the note, but that it never transferred the instrument. We think the first proposition

of law relied on by plaintiff does not apply to the facts of the present case, unless it appears that Dechard had the authority to transfer negotiable instruments, for the court found that Dudgeon, the secretary, not only was not authorized by the corporation to transfer such instruments, but that he expressly instructed Dechard not to turn over the note to plaintiff until and unless it had been signed by the president.

■■ The next proposition of law is stated by plaintiff as follows: "A principal is bound by the contracts made by his agents when the agents have the apparent or implied authority to effect the transaction in question." As a statement of the general rule of law this is, of course, correct. The question, however, is, Do the facts in the case show such apparent or implied authority? It appears clearly from the evidence and the findings of the court that plaintiff must have known that Dechard had no authority to complete the transaction, for the latter told plaintiff he would have to go and see Dudgeon, the secretary of the hospital, before the note could be transferred. It also appears that when Dudgeon signed the instrument, he expressly told Dechard that it must not be delivered until such time as Cox had signed it, and that he did not deliver the note to plaintiff, but to Dechard. We think this was sufficient at least to put plaintiff on inquiry as to the authority of Dechard to complete the transaction if, indeed, it was not direct notice to plaintiff that he had no such authority.

■ The next proposition of law as stated by plaintiff is,

"Voluntary payments cannot be recovered, especially when there is no doubt of the indebtedness of the payor to the payee, and when the payment is made without mistake, in the absence of fraud, duress

and coercion and when the payment should have been made in equity and good conscience."

Again, there is no doubt as to the correctness of the abstract rule, but we think it also is inapplicable to the facts of the case. When "voluntary payments" are referred to, obviously it means payments by a person entitled to make them and not by someone who is unauthorized to do so. If Dechard had authority to make payments by transferring negotiable instruments, then, of course, a voluntary transfer by him could not be recovered, if it was in payment of a debt which was due in equity and good conscience. But it appears clearly from the findings of the court and the evidence that Dechard was not authorized to make the transfer, and it further appears that there is grave doubt in the minds of the responsible authorities of the intervener as to whether the alleged debt was actually due plaintiff. It has never been acknowledged by intervener, nor has the issue been litigated and determined.

■■ The second proposition of law presents the most difficult question. It may be stated as follows: "A principal accepting the benefits of an unauthorized act of his agent will not be allowed to repudiate the transaction, and at the same time retain the benefits resulting from the unauthorized act." This again is correct as an abstract principle of law, but it should be qualified by stating that the acceptance of the benefits must be with a full knowledge of all the facts concerning the transaction. Let us see what the benefits alleged to have been received by intervener as a result of the unauthorized transaction were. The only benefit which the evidence shows is the entry in intervener's ledger, by plaintiff, of a credit on a debt of the intervener to him, which he also entered in the ledger. Assuming, for the sake of the argument, that

the intervener was, as a matter of law, indebted to plaintiff in the amount claimed by the latter, the only effect of the entry was similar to that of a receipt on account given by plaintiff to the intervener. As soon as intervener's duly authorized officers discovered the situation, they repudiated the transfer of the note and, necessarily and inferentially the book entry, being nothing but a receipt, was canceled so that intervener could not have successfully defended against a suit on the alleged debt on the ground of payment. When the note was transferred to plaintiff, he had, at most, a right of action against the intervener for wages due. After the transfer of the note was repudiated, he still had such right of action unaffected by the transaction, for the statute of limitations had yet many months to run. Such being the case, we cannot see where the intervener had retained any of the benefits of the unauthorized transaction. If it owed plaintiff the debt which he claimed before the transfer, it still owed it after the transfer, and plaintiff had precisely the same remedies at his command that he had before the inception of the transaction. Nor does it appear intervener was not just as able to satisfy any judgment against it as it was before. We think the proposition of law last above set forth does not apply to the circumstances as shown by the evidence herein. This disposes of all the questions raised on the appeal.

The judgment of the superior court of Pima county is affirmed.

McALISTER and ROSS, JJ., concur.