[Civil No. 3922.  Filed February 28, 1938.]

[76 Pac. (2d) 752.]

## THE EQUITABLE LIFE ASSURANCE SOCIETY OF THE UNITED STATES, a Corporation, Appellant, v. A. EMERSON BOYD, Appellee.

Messrs. Armstrong, Kramer, Morrison & Roche, for Appellant.

Mr. H. M. Van Denburgh, for Appellee.

ROSS, J.—This is an action for permanent disability benefits under the terms of a life insurance policy. A jury sat in the case until the evidence was closed, and then by stipulation of the parties the jury was discharged and the case submitted to the court. The court found that defendant under its policy owed the plaintiff monthly payments of $10 for fifty-two months or from November 3, 1932 (the date plaintiff alleged in his complaint that he became totally and permanently disabled), until March 3, 1937, a month preceding the trial, and entered judgment for such sum and interest to March 3, 1937, amounting to $588.90. The defendant appeals.

The policy is dated November 13, 1929, and calls for the payment of annual premiums thereafter on that date. The premium due November 13, 1932, was not paid, and has never been paid. The promise of the defendant in its contract is:

". . . if the Insured before age 60 becomes *totally* and presumably *permanently disabled* as defined in the Total and Permanent Disability provision on the third page hereof, the Society will, subject to the conditions of such provision, waive subsequent premiums and pay to the Insured a *disability income of ten dollars a month.*"

The plaintiff made his proof of disability in January, 1933. Defendant rejected such proof and refused to pay him benefits.

As we understand defendant, it claims the policy lapsed because the premium for 1932 was not paid and also that the evidence does not support the finding of total and permanent disability as alleged.

We think it is implicit in the terms of the contract that, if the insured becomes disabled at a time when he has paid all his dues, it is not necessary thereafter that he pay any dues. He, however, must conform with the terms of the policy in his proof of disability. The provisions of the policy that govern and control under the facts as they appear here are as follows:

"*Definition*: For the purpose of this policy:

"(A) Disability is *total* when it prevents the Insured from engaging in any occupation or performing any work for compensation of financial value, and

"(B) Total Disability is *presumably permanent* only under the circumstances and from the date (herein called the Effective Date) as follows: (1) When due proof is received by the Society that it will presumably exist continuously during the remainder of the Insured's life—then from the date upon which such proof is received by the Society; or, (2) When it has existed continuously for three months—then from the date of the expiration of such three months; . . .

"(C) . . .

"*Benefits:* Upon receipt of due proof before the expiration of one year after default in the payment of premium, or if there be no such default not later than one year from the maturity of this policy, that the Insured, while this policy was in force, became totally and presumably permanently disabled as above defined due to bodily injury or disease:

"*Disability Before 60:* (1) Before the anniversary of the Register date of this policy upon which the Insured's age at nearest birthday is 60 years, the Society will

"(a) *Waive payment of all premiums* falling due upon this policy after the Effective Date of such Disability and during its continuance.

"(b) *Pay to the Insured a monthly Disability Income* as stated on the first page hereof from the Effective Date of such Disability; the first payment to be made upon receipt of such proof and subsequent payments to be made monthly thereafter during the continuance of such Disability. . . .

"(Note:—Any premiums so waived and any Disability Income so paid shall not be deducted from any amount payable in any settlement of this policy.)"

(*Rider* to Policy) "It is hereby agreed that when Total Disability has existed continuously for three months it will be regarded by the Society as presumably permanent from the date of completion of one month of continuous Total Disability (herein called the Effective Date) notwithstanding Sub-paragraph (2) of Paragraph (B) of the provision for Total and Permanent Disability Benefits."

"*Grace.*   A grace of thirty-one days will be granted for the payment of every premium after the first, during which period the insurance hereunder shall continue in force.   No interest will be charged upon premiums paid during the days of grace.   If death occur within the days of grace, the premium then due and unpaid shall be deducted from the amount payable hereunder."

"*Lapse and reinstatement.*   Failure to pay any premium on or before the day on which it falls due shall constitute a default hereunder.   Upon default this policy shall lapse and the insurance herein cease, except as stated in the provisions hereof entitled 'Grace' and 'Options on Surrender or Lapse,' but it may be reinstated. . . ."

Defendant's first proposition is that relief will be denied one who seeking equity does not come into court with clean hands. This is not an equitable action. Plaintiff is not asking that the contract be reformed but that it be enforced in accordance with its terms. Defendant likewise insists that the contract is the measure of plaintiff's rights. They differ as to its meaning, and we are not surprised.

Insurance contracts are drawn by the insurer and, when they do not plainly and clearly express the intention of the parties but leave such intention uncertain or doubtful, the courts have uniformly construed them most favorable to the insured. This is a just and equitable rule of construction because insurance con-

tracts are more or less involved and technical and the mental children of the agents of the insurer.

■ Defendant's second proposition is:

"When a policy of insurance provides that, upon receipt of due proof before the expiration of one year after default in the payment of premium that the insured, while the policy was in force, became totally and permanently disabled, the Society will waive all premiums falling due *after* the *effective date* of such disability, and when the assured makes such proof within said year and a premium falls due *before* such *effective date,* the Society does not waive the payment of such premium, and if the premium is not paid within 31 days after the date when such premium falls due the policy lapses as of the date when such premium became due, and no recovery for total and permanent disability can lawfully be had."

This proposition raises the question as to what premiums the defendant's contract agrees to waive when there is a default. Plaintiff is given one year from the date of default in the payment of premium or, *if there be no such default,* one year from *maturity* of policy in which to furnish proof of his disability. He furnished such proof in January of 1933 or within ninety days from November 13, 1932, the date to pay premium. To determine if proof was furnished in time to secure the waiver of the payment of premiums and to prevent the policy from lapsing, in a proper case, it is necessary to ascertain the meaning of the words "Effective Date," if we can, for it is premiums accruing after that date that are waived. Paragraph B (1) fixes one effective date, and B (2) as amended by the rider another. The effective date under B (1) would be from the date of proof of disability; under B (2) as amended it would be at the completion of the first month of a continuous total disability of three months. Assuming the court correctly found that plaintiff's disability came to him November 3, 1932,

as alleged in his complaint, the effective date would occur during the grace period or on December 3, 1932. The grace period under the contract is from November 13, 1932, to December 14, 1932, and during that time the policy did not lapse. The policy was in force on the effective date when the right to payments under the express terms of the contract for disability accrued.

There are two cases involving the exact question here, upon facts so similar that if such decisions are accepted they determine the question in favor of plaintiff. *Equitable Life Assur. Soc. of United States* v. *Neff*, (Ind. App.) 10 N. E. (2d) 307, 309, decided in October, 1937; *Equitable Life Assur. Soc. of United States* v. *MacKirgan*, (5 Cir.) 86 Fed. (2d) 271, 274, decided in November, 1936. We find no case construing the same policy to the contrary. In the first case the court, after stating the facts and indicating the ambiguity in the contract, said:

"We find no provision of the policy that expressly and clearly covers the controversy in the instant case. While clause B under the heading 'Definition' deals with the subject matter, its meaning, when considered with other provisions, especially those dealing with the question of waiver of payment of premiums under certain conditions, is not clear and explicit, but ambiguous and subject to construction.

"It is without dispute that one of the inducements for securing a policy of this character is protection against disability. Let us suppose that total disability occurs while such a policy is in force, and continues for 2 months and 2 weeks from the date of its beginning, then results in death. Would it be reasonable in the absence of a clear expression in the contract so providing to hold that there could be no recovery because such total disability had not become presumably permanent by continuing 3 months even though as a matter of fact it was actually permanent until death? Such a holding would make the disability benefit features of the policy ineffective to accomplish the

purpose for which the insured had paid premiums from the time of the issuance of the policy. It seems evident that actual total disability is the condition for which the insurer obligates itself to pay and from which the insured seeks protection. If such total disability continued for 3 months while the policy was in force, and thereafter ceased to exist, it could not logically be contended, nor could it reasonably be held, that the insurer would be obligated to continue to pay disability benefits because of the provision that any such disability should be presumably permanent if it was continuous for 3 months, if in fact such disability terminated after such period of time had elapsed. Had death instead of disability occurred while the policy was in force it is not likely that any question would be raised as to the right of the death beneficiary to recover. Why should a different rule be applied when a disability is sustained which renders the insured totally and presumably permanently disabled?

"It is well settled that where the terms of a policy are of a doubtful meaning that construction most favorable to the insured will be adopted."

In the second case the question was whether an insured person, under a policy the same as the one here, who became totally and permanently disabled during the grace period, was entitled to benefits and the court held that he was. The court said:

"The effect of the grace provision is that a credit of thirty-one days is available for paying the premium and for doing away with the tentative lapse of the policy, no interest even being chargeable on the premium. During this period of suspense if death occurs the death insurance and the double indemnity being in force are collectible, and by express agreement the overdue premium is to be paid out of the insurance. It is equally plain that if the disability insured against occurs during the grace period the disability income becomes collectible; and by the parenthetical note above quoted the 'premiums waived' are not to be deducted. If the overdue premium on which grace was running when the disability occurred is not within the provision for waiving premiums, it would of course not be

waived, but it would be, without any express provision to that effect, a good offset against what the Society owed. The nonwaiver of that premium would not be construed to defeat the disability insurance plainly continued in force by the grace provision.''

Another interesting case on the ambiguity of defendant's policy, as to the ''effective date,'' is the *Equitable Life Assur. Soc.* v. *Hill,* 230 Ala. 505, 161 So. 800.

■■ Ordinarily when the event insured against happens it matures the insurance policy. The policy here is a combination of life, health, and accident insurance. In life insurance, when the insured dies his obligation to pay premiums ceases. In accident insurance, when the insured suffers injury by accident his obligation to pay premiums ceases. And in health insurance, when the insured's disability ''prevents the Insured from engaging in any occupation or performing any work for compensation of financial value,'' the event insured against has happened and no longer should he be expected or required to pay premiums. In case the policy matures so that the insurer is, under its terms, obliged to pay health benefits, it should not be assumed that the insurer would thereafter exact premiums from the insured. In this case there was no ''default,'' as defined by the policy, before the event insured against happened. The policy provides it shall lapse if a premium is not paid when it falls due, thereby negativing the idea of its lapsing for any other reason. As stated above, we think it implicit in the contract that the defendant agreed that if the event insured against happened while the policy was in force, and proof thereof was made in due time, the defendant would pay plaintiff health benefits as stipulated.

■■ The defendant next contends the evidence does not support the judgment, in that it fails to show that plaintiff was totally and permanently disabled at

the time specified in his proof and in his complaint, but on the contrary shows that he performed all of his duties on said dates and also on later dates and received compensation therefor. This assignment questions the court's determination of the facts. Under our rule, if there is substantial evidence to support the court's findings we will not disturb them. The evidence is that plaintiff was working as a night watchman for the Ford Motor Company at its branch at Pittsburgh, Pennsylvania; that around the middle of October of that year, from wet and cold exposure, he had developed a severe pain in his right leg, which was diagnosed by a physician as neuritis of the sciatic nerve; that the pain grew progressively worse and another physician whom he saw advised a tonsillectomy, which he underwent on November 4, 1932; that he quit working for the Ford Motor Company on November 3, 1932; that he was not able to work and quit because of the severe pain. Plaintiff testified that the manager in charge of watchmen for the Ford Company called him on November 10th and asked him to work that night if possible; that in answer to this request he went to the Ford plant but didn't work; that he stayed in the reception room by a heater and answered the telephone; that he didn't make the rounds and punch the clock, which had been his duty before he quit his employment; that he was "wracked with pain" on that night and running a high temperature; that the following morning he was unable to drive his car and had a man living near him drive him home and later called a doctor; that on November 22d or 23d he was again called and decided that he would go back because he didn't want to lose his job; that he performed the same services as on the 10th, and the following morning was driven home by a neighbor and went to bed; that he went through the same experience on Thanksgiving night; that he had not done a day's

work since that time; that he spent a year and a half in the hospital and left the hospital to come to Phoenix under the advice of doctors who said that they had done all they could for him.

Dr. A. M. Tuthill testified at the trial that plaintiff was totally and permanently disabled from rheumatism or arthritis.

It appears that in January, 1933, plaintiff applied to the defendant to be reinstated, and in his application, which was made on a form furnished by defendant, was this statement, "certify I am in good health except tonsils removed 11–4–32," giving the name of the physician who performed the tonsillectomy and his residence. Defendant makes some point of this representation. It seemed to be a frank, honest statement of plaintiff's condition at the time it was made. Its weight however, was for the court that tried the case.

Defendant contends that the disablement of the plaintiff was not such as the policy calls for to entitle him to benefits. In *Equitable Life Assur. Soc.* v. *MacKirgan, supra,* the court approved the following instruction:

"Such disability means one 'which prevents the insured from engaging in any occupation or performing any work for compensation of financial value' and it must be total as distinguished from partial disability. Of course the work must be substantial and not trivial, amount to a job, an occupation, and a disability under this policy does not necessarily imply an incapacity to do any work at all, or that the person must be bedridden, or that he must work where to do so would shorten his life or seriously impair his health; and the fact that he did do some work because forced thereto by absolute necessity when he was really not able to work would not change a total disability to a partial one. The fact that one has done some work just before or after the alleged lapse of his policy is not of itself sufficient to defeat his claim of total and permanent disability. He may have worked when

really unable and at the risk of endangering his life or health," saying: "The policies which have come before the courts have used varying terms, such as 'disabled from,' 'unable to,' or, as here, 'prevented from' working. They are all capable of a rigid literal construction so as to exclude from the benefit of the insurance cases where any work is done even though very slight and at the expense of health or under pain so great that work ought not to be expected of the sufferer. But the weight of authority is that the terms are not intended in that rigid sense, and that one whose work is only trivial or is done under the pressure of necessity and at the expense of health or great pain is disabled or unable or prevented from working within the real meaning of the insurance." See, also, *Prudential Insurance Company of America* v. *Girton,* (Ind. App.) 12 N. E. (2d) 379.

We think the court's finding of total and permanent disability is supported by the evidence and the law.

The judgment is affirmed.

McALISTER, C. J., and LOCKWOOD, J., concur.