**359 P.2d 760**

Vidal **GOMEZ** and Jessie Gomez, husband and wife, Appellants,

v.

D. A. **DYKES** and Florence E. Dykes, husband and wife, Appellees.

No. 6390.

Supreme Court of Arizona.

Feb. 23, 1961.

Rehearing Denied May 5, 1961.

**172**

Clark & Coker, Phoenix, for appellants.

Moore & Romley, Phoenix, for appellees.

JENNINGS, Justice.

This appeal involves the incidents arising out of contracts for the sale of real and personal property wherein appellants Vidal Gomez and Jessie Gomez, husband and wife (hereinafter called plaintiffs), are the buyers, and appellees D. A. Dykes

and Florence E. Dykes, husband and wife (hereinafter called defendants), are the sellers.

Prior to October 7 through 10, 1952, the parties hereto negotiated for the sale and purchase of a ranch located in south Phoenix, Arizona, composed of real and personal property owned by defendants. On or about October 10 the parties concluded their negotiations by signing and executing a contract and an agreement of sale which specifically described certain real and personal property to be transferred to plaintiffs for an agreed consideration.

Pertinent, but not in contention was an agreement that defendants could feed and keep their cattle in various cattle pens on the premises until February 1, 1953. Thereafter dispute arose between the parties and after negotiation, it was stipulated that defendants might remain in possession of the cattle feeding pens from February 1, 1953 to and including May 31, 1953, as tenants from month to month on payment of an agreed rental. During the same period following February 1, 1953, further dispute arose whereby plaintiffs claimed they were entitled under the agreement of sale to a clodbuster which they claimed had been removed from the premises. Plaintiffs also contended that they were entitled to a trailer house which had been on the premises.

A third dispute concerned manure in the cattle feeding pens. On or about May 31, 1953, defendants removed some 1,645 tons of manure from pens 1 through 8. Thereafter defendants sought to remove the manure from the remaining pens 9 through 11 but were prevented by plaintiffs from so doing. The facts also disclose that plaintiffs did thereafter remove some 660 tons of manure from pens 9 through 11.

On these matters of dispute the trial court ruled for the defendants and based its decision on ten specific findings of fact from which it laid down six conclusions of law.

From this decision plaintiffs bring six voluminous assignments of error. The first two, in substance, allege that the evidence does not support the judgment concerning the clodbuster; that the defendants did by their silence at the time of the preliminary negotiations and subsequent written agreements, fail to reserve the same as not being part of the ranch properties to be sold, and that the court erred in finding and holding that defendants did not sell nor agree to sell the trailer house to the plaintiffs.

Where findings of fact and the judgment of the trial court are supported by evidence they will not be disturbed and will be sustained on appeal. Speedway Enterprises v. Hartsell, 75 Ariz. 36, 251

P.2d 641; Allen v. Whiting, 58 Ariz. 273, 119 P.2d 240; In re Taylor's Estate, 56 Ariz. 211, 106 P.2d 492; Equitable Life Assur. Soc. of United States v. Boyd, 51 Ariz. 308, 76 P.2d 752; Tway v. Southern Methodist Hospital and Sanitorium of Tucson, 48 Ariz. 490, 62 P.2d 1318.

Plaintiffs claim they intended to purchase a certain clodbuster and that such item was not delivered to them. In support of this position plaintiffs offered evidence of conversations between defendant Dykes and plaintiff Vidal Gomez, Sr. and Vidal Gomez, Jr., which were all prior to or concurrent with the signing of the written agreement of the parties specifying those items of personal property that were sold. The substance of these conversations was that defendant Dykes offered the entire place for sale with everything on it except cattle and personal belongings. According to plaintiffs this was to include a clodbuster like the one shown in plaintiffs' Exhibit A–1 in evidence which plaintiffs claim was on the premises. Defendants made a continuing objection that such conversations were inadmissible as being in violation of the parol evidence rule. However, the parol evidence rule is not in issue. The evidence indicates that the defendants did return a clodbuster to the plaintiffs. The question does arise whether this clodbuster was the same as that which plaintiffs claim they intended to purchase.

■ Since the sales agreement lists certain items of farm machinery to be sold and then in the next breath, relating to this transaction, makes an all-inclusive reference to "any other tools or supplies that are on the ranch at the present time," we agree with the trial court that for the lack of specific agreement on the matter, there can be no breach of it.

■ As relates to the trailer house the question arises, was the trailer house a fixture and therefore realty to pass under the realty agreement or, was it not a fixture so that it retained its character of personalty? The rule is set forth in Fish v. Valley Nat. Bank of Phoenix, 64 Ariz. 164, 170, 167 P. 2d 107, 111:

"The mere affixing of personal property to real estate may or may not cause it to lose its personal characteristics. It may retain its identity as a chattel personal and not become a chattel real. The rule is that for a chattel to become a fixture and be considered as real estate, three requisites must unite: There must be an annexation to the realty or something appurtenant thereto; the chattel must have adaptability or application as affixed to the use for which the real estate is appropriated; and there must be an *intention* of the party to make the chattel a permanent accession to the freehold. 36 C.J.S., Fixtures, § 1, p. 892. The testimony in this

case is wholly barren of these requisites." (Emphasis ours.)

This rule applies in the absence of an agreement between the parties which would otherwise determine the character of the item.

As this Court stated in Voight v. Ott, 86 Ariz. 128, 134, 341 P.2d 923, 927:

> "The modern tendency is to place less emphasis on the method or mode of annexation of the chattel and to give greater consideration to the intention of the parties as respects the use and adaptability thereof. * * *"

Based on this law we find that the evidence supports the trial court's findings and conclusions of law No. II. The trailer house belonged not to defendants but to an employee named Vale who brought it to defendants' premises when he came to work there. It was parked near the permanent employee house, temporarily attached thereto merely by a piece of tin held in place by temporary placement of cement blocks. With no evidence of electrical, water or gas connections of any kind having been made to the trailer house, the evidence discloses that there was no permanent annexation to the realty.

The second requisite to the rule could have been met. However, there is no evidence of the third requisite, intent, which as above mentioned, is the most important element of proof. Defendant Dykes could have no such intent. The trailer house did not belong to him but to his employee. Further, the rule provides that all three elements must unite. Since this did not happen the trailer house retains its character of personalty. As such, it did not pass to plaintiffs under the personalty agreement because it was not listed therein.

This jurisdiction is faced with a dearth of law to resolve the question whether the manure on the premises at the time of the sale, and whether that which accumulated after the sale, is realty or personalty.

The great weight of authority in other jurisdictions holds that manure produced by animals fed upon the products of the farm is part of the realty, since such manure was used to supply the drain made upon the soil in the production of said crops. Whereas, considered to be personalty is that manure which was not made in the ordinary course of husbandry but which is manure from animals fed on products grown elsewhere than on the farm where the manure is dropped. Haslem v. Lockwood, 37 Conn. 500, 9 Am.Rep. 350; Daniels v. Pond, 21 Pick., Mass., 367, 32 Am.Dec. 269; Fay v. Muzzey, 13 Gray, Mass., 53, 74 Am.Dec. 619; Collier v. Jenks, 19 R.I. 137, 32 A. 208, 61 Am.St.Rep. 741.

Collier v. Jenks, supra, states:

> "Manure made in livery stables, or in barns *not connected* with farms, or otherwise than in the usual course of

husbandry, forms no part of the realty on which it may be piled, but is regarded as personal estate. * * *"
(Emphasis ours.)

This sentence carries with it the connotation that manure is personal estate when it is produced by transient owners' animals situated in temporary quarters or when the manure is made otherwise than in the usual course of husbandry. The reason for this rule is the strong public policy to keep that which has never become a true part and parcel of the land freely alienated from same. By the same token, if the animals have not been fed with the products of the land, the land has not been impoverished, and consequently, the animals' owner owes no duty to leave the manure to replenish the land.

Taylor v. Newcomb, 123 Mich. 637, 82 N.W. 519, which dealt with a landlord and tenant relationship, sustains this proposition, namely:

"The great weight of authority in this country sustains the rule that, as between landlord and tenant, * * * 'if the manure were not produced directly or indirectly from the land, and were in no sense the product of agritural demised premises,—such as accumulates in livery stables and the like,—it is no part of the realty, and may be removed by the tenant at the close of his term.' * * *"

We adopt this rule.

Should the result be different, where animals owned by the fee simple owners of farmland are permanently located on land connected with the farm, and where manure from such animals accumulates over a period of time? We think not. The test still remains, were the animals fed from products of the land or were the animals fed from products grown elsewhere. The good husbandman has a duty to protect the quality of his land; to replace and replenish when the soil or products of the soil have been taken. But there is no corresponding duty to add to the quantity of the land.

For the above-mentioned reasons the trial court properly held that the manure dropped by the defendants' cattle rightfully belonged to defendants.

The evidence is undisputed, both by witnesses for the plaintiffs and the admissions of defendant Dykes, that the manure deposited in the feeding corrals by both plaintiffs' and defendants' cattle was mixed with and churned into the native soil of the corrals, which was sandy in character. It is also readily apparent that an added complication, difficult of extraction, entered this case when the manure of defendants' cattle mixed with the manure of the new fee simple owner. Therefore, calculating the proper quantity of manure belonging to each litigant and affixing the value thereof is no easy chore. Though difficult, this matter was purely within the discretion of the trial court and we do not find that the

court abused its discretion wherein it awarded 660 tons of manure at the rate of $2.50 per ton to defendants.

Plaintiffs' claim herein for punitive damages is based on specific performance of the contracts or in lieu thereof, damages. It has nothing whatsoever to do with fraudulent acts. No actual damage has been found. Under these circumstances we hold that plaintiffs may not recover punitive damages on their complaint.

Accordingly, the judgment of the trial court is affirmed.

STRUCKMEYER, C. J., BERNSTEIN, V. C. J., and UDALL and LOCKWOOD, JJ., concur.