430 P.2d 136

**Shirley H. BIRT, Appellant,**

**v.**

**Dancey BIRT, Appellee.**

**No. 8908–PR.**

Supreme Court of Arizona.

In Banc.

July 7, 1967.

Lesher, Scruggs, Rucker, Kimble & Lindamood, Tucson, for appellant.

Carlos G. Robles, Tucson, for appellee.

STRUCKMEYER, Justice.

This case is before us on a petition to review the Court of Appeals' decision, 4 Ariz.App. 220, 419 P.2d 350, affirming a judgment of the Superior Court of Pima County. Opinion vacated and judgment reversed.

Appellee, plaintiff below, filed an action against his mother, appellant and defendant below. Though entitled "Action on Contract," the complaint's prayer is equitable in form, and both the parties and the court treated the case as an action in equity to impose a constructive trust on the proceeds of certain shares of stock held in appellant's name.

Appellee alleged that his mother owned fifty per cent of the stock in Marana Plantations, Inc.; that his father, who was divorced from his mother, owned the other fifty per cent; that he and appellant agreed jointly to purchase the father's fifty per cent, jointly to manage the corporation's business (farming), and that "when the purchase price was paid in full, the corporate stock so purchased would be owned jointly by the plaintiff and the defendant;" that the father's stock was purchased and was paid for in full from assets and income of the corporation; that because of the relationship of mother and son, appellee "permitted the defendant to hold for him, his shares of the said capital stock;" that subsequently appellant repudiated her agreement, sold all the stock and refused to divide the proceeds with the appellee. The complaint prayed that "the share and interest of the plaintiff in the proceeds * * * be determined, and judgment be entered in favor of plaintiff for the amount or value thereof," and for an equitable lien on the proceeds to secure the judgment.

The trial judge, on stipulation of the parties, submitted the case to a jury in the form of a special verdict, and the jury brought in the verdict in the form submitted, in the following words:

"We, the jury, * * * find that the Plaintiff and Defendant, prior to the acquisition of the stock of Halden E. Birt, did enter into a contract between them to buy that stock together and thereafter own it in equal shares."

This being an equity case, the court thereafter took evidence, over appellee's objections, to ascertain the amount due appellee, and awarded him a judgment for one-quarter of the amount of the sale price of the stock without any deductions or offsets for expenses of sale or unequal capital contributions. The evidence established that the stock was sold for $681,537.11 with $245,633.87 paid to the date of the trial.

On appeal no questions are raised as to the propriety of the jury's verdict, and appellant concedes that this aspect of the trial was free from substantial error. Appellant argues only that the amount of the final judgment entered in the trial court is incorrect because of the failure to allow applicable offsets. Appellee asserts, without questioning the validity of the offsets, that appellant did not plead a setoff or counterclaim as provided by Rules 8(a) and 13(a), Rules of Civil Procedure, 16 A.R.S., and hence that the appellant was not entitled to the amount of the claimed credits.

Neither of the cited rules controls the disposition of this cause. This is an action to establish appellee's rights and, upon determination, for an accounting. The rule that affirmative relief will not be granted to a defendant unless he pleads a setoff or counterclaim has no application to accountings.

> "The issue in the 1936 action between the parties in which we are interested was in effect an equitable action for an accounting. In such an action the rule that affirmative relief will not be granted to a defendant unless he demands the same by set-off or counterclaim does not apply. In such an action the complaint implies an offer by the plaintiff to pay any balance that may be found due the defendant. The complaint itself raises the issue." Miller v. Joannes, 262 Wis. 425, 55 N.W.2d 375.

And see Haldash v. Widlak, 23 Ill.App.2d 313, 162 N.E.2d 599; Cline v. McKee, 186

Okl. 366, 98 P.2d 25; Pearl v. Logan, 349 Pa. 84, 36 A.2d 435.

Appellee's theory of the case, as expressed in his testimony, was that he was jointly liable for one-half of the purchase price of his father's stock. He testified:

"I was on that contract and I don't believe that any lawyer would stand up and say that I would be relieved of the responsibility for half of that indebtedness * * *."

It was his further premise that he was the equitable owner of one-half of his father's stock.

"Q Well, what did she [appellant] say?

"A Well, she said, 'We will purchase your father's stock and we will run the thing for ten years and we'll split the stock.'"

At another time he testified:

"Q And your agreement was to divide the stock after a period of ten years when you paid for it?

"A That's correct."

And also:

"Q And what were you going to do with this? How was that—

"A We were going to buy the stock together and divide it equally at the end of ten years when we had the place paid for."

While this testimony is sufficient to support the jury's conclusion that appellant and appellee entered into a contract to buy the father's stock and to own it in equal shares, it is far short of supporting a conclusion that, if appellant's capital contributions were greater than appellee's, the excesses would be a gift by her to appellee. The assertion now by appellee that there was an agreement to pay the indebtedness with money produced by the corporation finds no support in the evidence.

◼ It is, consequently, appellant's position that in the accounting she is entitled to be credited with the excess money which paid for appellee's stock out of the corporate assets because of her seventy-five per cent interest and that the court below should have charged the payments to the personal drawing accounts of the parties or to dividends paid to the parties in proportion to their stock ownership. With this we agree.

◼ Since the basic action was to impose a constructive trust upon the proceeds of the sale of the stock by appellant, the general rules regarding constructive trusts apply. Scott on Trusts, 2nd Ed., § 479, p. 3146, states:

"Where the plaintiff seeks to recover property from the defendant by enforcing a constructive trust of the property, the plaintiff must restore to the defendant the amount expended by the defendant in acquiring the property."

In Chambers v. Chambers, 406 Pa. 50, 176 A.2d 673, the court said:

"Under the circumstances, justice requires that appellant reimburse appellee for the expenditures made by her * * * as well as any expenditures paid by her *to satisfy the personal obligations of the parties*." (Emphasis supplied.)

See also Ryan v. Plath, 18 Wash.2d 839, 140 P.2d 968.

It is clear that, of the $207,842.00 paid for the stock, the amount that should have been paid by each party was $103,921.00. By virtue of the unequal ownership in the corporation (the whole of the corporate income and assets were pledged and mortgaged to secure the stock purchase), appellee paid only $51,960.50, which is $51,960.50 short of his share of the cost of the stock, and that appellant paid $155,881.50, which is $51,960.50 over her proportionate share. The amount of $51,960.50, therefore, should have been allowed as a credit against the amount of the judgment.

◼ Appellant further claims as a credit an item totaling $16,679.00 as a selling expense of the property. It was stipulated by the parties that the amount of this item was reasonable. Here again the crediting of this to appellant as a payment by her is not

a matter of counterclaim or setoff. It should have been divided between the parties, charging twenty-five per cent of the expense to appellee and seventy-five per cent to appellant.

Appellee points out that there was money in the bank in the corporation's name in excess of $20,000.00 just prior to the sale of the stock and that it was withdrawn by appellant as a claimed officer's salary. He suggests that he should be allowed a credit of twenty-five per cent of this sum. Since we have concluded this case must be reversed with directions to enter a judgment in accordance with the views herein expressed, the trial court is also directed to enter into an examination of the merits of this claim and, in entering the final judgment, to give effect to its conclusions relative thereto.

Judgment of the Court of Appeals is vacated and the superior court is directed to enter a judgment in accordance with the views expressed herein.

BERNSTEIN, C. J., McFARLAND, V. C. J., and UDALL and LOCKWOOD, JJ., concur.