439 P.2d 837

**Henry SMITH and Jeanne C. Smith, Appellants,**

**v.**

**DON SANDERSON FORD, INC., an Arizona corporation; and Joseph Memmott and Verna Memmott, his wife, Appellees.**

**No. I CA–CIV 468.**

Court of Appeals of Arizona.

April 17, 1968.

Rehearing Denied May 16, 1968.

Review Denied June 11, 1968.

Tupper, Skeens, Rapp & Morris, by Edward Crehan Rapp, Phoenix, for appellants.

Jennings, Strouss, Salmon & Trask, by William R. Jones, Jr., Phoenix, for appellees.

KRUCKER, Judge.

Action was brought in the superior court of Maricopa County in 1962 alleging fraud in the sale of a 1962 Ford Thunderbird automobile on the part of defendants (appellees herein).

Stating the facts briefly, the plaintiffs, in July, 1962 purchased the automobile in question from the defendant Don Sanderson Ford, Inc. through its authorized salesman, Joseph Memmott. At the time of the purchase, the odometer on the automobile showed 3,000 miles. Plaintiffs claim it was represented to be a new car with 3,000 miles on it, having been only used as a demonstrator. Plaintiffs further claim that they were told that they would receive a Ford factory warranty of the Ford Motor Company. Memmott testified that he told Smith that the automobile was a used one and that it had been used as a demonstrator and that the warranty was not a Ford factory warranty but rather a warranty of Don Sanderson Ford, Inc. A normal conditional sales contract for the sale showed the sale price of $4,379.04.

Shortly thereafter, plaintiffs began experiencing difficulties with the brakes and the wheel alignment. Upon learning that the brakes were worn out and would have to be replaced, plaintiffs became suspicious and caused a title check to be made on the automobile, which disclosed that the subject car had had three owners prior to Don Sanderson Ford. Two of these were in reality the same, an individual dealer who had purchased the car in his own name and subsequently transferred the title to his dealership. Plaintiffs brought suit for damages based on fraudulent misrepresentation.

The case proceeded to trial on January 5, 1966 before a jury with the resulting verdict in favor of the plaintiffs awarding compensatory damages of $1,349, and punitive damages of $4,000. Judgment was entered on January 25, 1966. On March 1, 1966 judgment was entered pursuant to motion, granting defendants' judgment notwithstanding the verdict or in the alternative a new trial.

*From this judgment, plaintiffs bring this appeal.*

The grounds stated by the court in its order granting the motion for judgment notwithstanding the verdict are as follows:

"* * * upon the grounds and for the reasons that there was no evidence upon which the jury could find compensatory damages and upon the ground that the Court committed error in submitting the issue of punitive damages to the jury, and upon the further ground that the verdict of the jury was based upon passion and prejudice as a result of which defendants did not receive a fair and impartial trial."

We believe that the first of these grounds is dispositive of this appeal.

Plaintiffs make much of the fact that they did not receive a Ford "Factory" New Car Warranty, but rather a Don Sanderson Ford New Car Warranty. There was no testimony that such a warranty is more valuable than the one utilized by the plaintiffs. For us to give this difference a value would be to ignore the facts proven; i.e., that Don Sanderson Ford fixed all the defects that plaintiffs noticed in the subject automobile, with the exception of the worn brake linings which they refused to fix. Uncontroverted testimony showed that worn brake linings are not covered by any new car warranty issued by the Ford Motor Company or any of its dealers. Plaintiffs testified that they noticed the brake defects about two or three months, or 1500 miles, after they purchased the car. This would place the total mileage on the car at around 4500 miles at the time the brakes went out. There is no testimony as to what type of use plaintiffs gave the car during this time. There was no testimony that brakes do not and cannot wear out this rapidly nor can we so hold as a matter of law. Therefore we are precluded from determining that the condition existed at the time of sale. Plaintiffs further testified that they sold the car at a used car lot around one year later, in August or September of 1963, without fixing the brakes.

The only out-of-pocket expense ever mentioned by plaintiffs was "$50 to $100" to have the front end aligned "about five times" at a gas station where he took the car after the commencement of this lawsuit, but there is no testimony that the realignments were necessitated by the fact that the car was not a "new" car.

Plaintiffs' own witness testified that the car would have had a probable wholesale value of $3,750 in June of 1962. He then testified that the fairly well accepted or reasonable actual cash value of the car at that time would have been $4,100. Defendant Memmott testified that the list price of the car was $4,495 and that he allowed plaintiffs a trade-in of $2,095 on a 1961 Corvair, the actual cash value of which at that time was shown to be $1,700. Thus the contract showed a price inflated by about $400 which was in turn offset by the inflated allowance on the trade-in.

 The benefit of the bargain rule is the yardstick adopted by the Arizona courts in fraud cases. Sarwark Motor Sales, Inc. v. Husband, 5 Ariz.App. 304, 426 P.2d 404 (1967); Lufty v. R. D. Roper & Sons Motor Co., 57 Ariz. 495, 115 P.2d 161 (1941). Under this rule, the measure of damages is the value the car would have if the representations were true, less the actual value at the date of the sale. There was no testimony bearing on the value of the automobile besides the price paid. There was no testimony that the car was less valuable because of the defects complained of here. Applying this rule, we find no actual damages to plaintiffs unless we can arrive at the conclusion that a "new" car, with 3000 miles on it, worth $4,100, is more valuable than a "used" car worth $4,100. This we are unable to do. We agree with the conclusion of the trial court that plaintiffs did not show any actual damages arising from the alleged fraudulent misrepresentations of the defendant.

 A showing of the actual damages is essential to making out a case of fraud. Consequent and proximate injury resulting from the misrepresentation is one of the nine classical elements of fraud. Apolito v. Johnson, 3 Ariz.App. 232, 413 P.2d 291,

modified, rehearing denied, 3 Ariz.App. 358, 414 P.2d 442 (1966). A failure to prove any one of these nine elements would be fatal to any case sounding in fraud. Cullison v. Pride O'Texas Citrus Association, 88 Ariz. 257, 355 P.2d 898 (1960). Having found that no actual damage was proven by plaintiffs, we hold that punitive damages were wrongfully awarded. See, Craviolini v. Scholer & Fuller Associated Architects, 101 Ariz. 33, at 36, 415 P.2d 456 (1966); Gomez v. Dykes, 89 Ariz. 171, 359 P.2d 760, 82 A.L.R.2d 1093 (1961).

For the reasons stated above, the order granting defendant's motion for judgment notwithstanding the verdict must be, and hereby is, affirmed.

HATHAWAY, C. J., and MOLLOY, J., concur.

NOTE: This cause was decided by the Judges of Division Two as authorized by A.R.S. § 12-120, subsec. E.