519 P.2d 77

Robert L. STARKOVICH and Lois H. Star-kovich, his wife; John Chopas and Claire M. Chopas, his wife, Individually and as co-partners dba Guardian Development and Sales Co., Appellants,

v.

Harry R. NOYE and Evelyn D. Noye, his wife, Appellees.

No. I CA–CIV 2006.

Court of Appeals of Arizona, Division 1.

Feb. 26, 1974.

Rehearing Denied April 5, 1974.

Review Granted May 14, 1974.

Lewis & Roca by John P. Frank and James P. Walsh, Filipe K. Johansson, Phoenix, for appellants.

Sheldon Mitchell and Neal T. Roberts, Phoenix, for appellees.

## OPINION

KRUCKER, Judge.

This is an action for reformation of a joint venture agreement and punitive damages. Appellee, plaintiff below,[1] claims that the defendants, from a position of trust, fraudulently induced him to sign a joint venture agreement which did not reflect the plaintiff's true equal interest in the venture.

The facts of this case may be summarized as follows. In the summer of 1965, plaintiff Harry Noye, and defendants, John Chopas and Robert Starkovich, doing business as Guardian Development and Sales Company, hereinafter referred to as Guardian, orally agreed to become joint venturers in the development of the Wood Professional Building in Lake Havasu City, Arizona. In July of 1966 the formal joint venture agreement at issue was signed by the plaintiff and defendants. The Wood Professional Building was completed in the summer of 1967 and sometime thereafter a dispute arose between the plaintiff and defendants concerning their percentage interests in the joint venture.

Plaintiff claims that the interests are evenly split, fifty-fifty, between himself and defendants. His claim is based on the oral agreement made before the formal joint venture agreement was signed. Under the oral agreement, the interests were based on the parties' respective contributions. Defendants, however, claim a 90 percent interest in the venture with 10 percent in the plaintiff. This percentage arrangement was reflected in the formal joint venture agreement and in a warranty deed. According to defendants, this percentage was based upon the respective "cash" contributions of plaintiff and defendants.

In Count I of the complaint, plaintiff alleged that the defendants, specifically Starkovich, fraudulently induced him and his wife into signing the joint venture agreement which reflected the 90–10 interest. He sought a declaratory judgment reforming the deed to reflect an additional 40 percent interest in him and punitive damages for fraud. Count II was for an accounting.

The case was tried to a jury which found that defendants had committed fraud. They awarded plaintiff an additional 40 percent interest and $135,000 punitive damages. From the judgment entered, defendants appeal submitting numerous questions for review. In view of the disposition taken herein, we address ourselves only to the following question:

"Is a party entitled to use his opponent's unamended pleadings for purposes of cross-examination, argument, instructions, and other purposes?"

In June of 1969, plaintiff filed an unverified and unamended complaint. He alleged in part:

### IX.

"On or about July 21, 1966 the defendant Starkovich came to Havasu City and brought with him all the purported documents necessary to close the deal, and multiple copies thereof. He placed them in a pile in front of the plaintiff and urged him to sign. The plaintiff had previously seen and had the opportunity to read the documents relating to the real estate acquisition, the mortgage and subordination agreements which are attached hereto as exhibits. The plaintiff signed all the documents placed in front of him by the defendant Starkovich as the said Starkovich turned the pages for him. All documents were signed in Lake Havasu City, Arizona.

### X.

Plaintiff was induced into signing the joint venture agreement, Exhibit 'E' attached hereto, by fraud and deceit of the defendant Starkovich, acting for himself and other defendants, caused a subter-

---

1. Although the complaint was brought by husband and wife, we shall use the term plaintiff because the wife's connection is nominal.

fuge to be perpetrated on the plaintiff by including the joint venture agreement in and among the pile of documents placed in front of the plaintiff for signature, telling the plaintiff that it represented the percentage arrangement of the parties and which joint venture agreement did not, in fact, represent the true percentage arrangement of the parties; all of this was done by the defendants for the purpose of cheating and defrauding the plaintiff, the true facts being known at all times to the defendants and the defendants intending to have the plaintiff rely upon the fiduciary relationship existing."

On cross-examination plaintiff's testimony was somewhat inconsistent with that alleged in the complaint. He testified that at the signing of the formal joint venture agreement, Mr. Starkovich told him that the document represented the true relationship of the parties. He stated that when he signed the agreement he glanced at it and that it provided for a 50–50 interest. He also testified that after he signed the agreement, Mr. Starkovich substituted the front page of the agreement so that it would reflect a 90–10 interest instead of 50–50.

In order to bring this inconsistency to the jury's attention, defense counsel attempted to impeach the plaintiff by use of his complaint and his depositions. During cross-examination of the plaintiff, the trial court sustained certain objections made by plaintiff's counsel regarding defendants' use of the complaint.

Defendants argue that plaintiff's complaint is a judicial admission and as such they should be able to confront him with its averments, which are inconsistent with his testimony at trial. As a result of sustaining the objections, they maintain that the trial court erred because it limited their use of the complaint on cross-examination of the plaintiff.

■ As defined in IX Wigmore, Evidence § 2588 (3d Ed. 1940), a judicial admission is:

"An express waiver, made in court or preparatory to trial, by the party or his attorney, conceding for the purposes of the trial the truth of some alleged fact, has the effect of a confessory pleading, in that the fact is thereafter to be taken for granted; so that the one party need offer no evidence to prove it, and the other is not allowed to disprove it. . . . It is, in truth, a substitute for evidence, in that it does away with the need for evidence." § 2588 at 586.

The use of a judicial admission in the same case is explained in IV Wigmore, Evidence § 1064(2) as follows:

"This much being generally conceded, it follows that *a party may* at any and all times *invoke the language of his opponent's pleading on that particular issue* as rendering certain facts *indisputable*; and that, in doing this, he is on the one hand neither required nor allowed to *offer the pleading in evidence* in the ordinary manner, nor on the other hand forbidden to comment in argument without having made a formal offer; for he is merely advocating a construction of the infrajudicial act of waiver of proof. . . ." § 1064(2) at 67. (Emphasis in original)

Defendants' amended answer denied the allegations contained in paragraphs II through XIII of the complaint. In so doing they did not concede the truth of the facts alleged nor did they waive the necessity of proof. Their answer was in the nature of a qualified general denial which put in issue the paragraphs denied.

■ On this issue the instant case is comparable to *Yaskin v. Allston*, 179 F. Supp. 757 (E.D.Pa.1959), aff'd 277 F.2d 926 (3d Cir. 1960). In *Yaskin* an averment in a complaint was a little different from the plaintiff's testimony at trial. To show the inconsistency in the statements, the defendant attempted to cross-examine the plaintiff in reference to the averment. The court held that a statement of fact in a federal court complaint can be used in cross-examination to contradict a plain-

tiff's testimony at trial. However, the court pointed out that the complaint, which had been denied, was not a judicial admission. Similarly, we have no judicial admission.

■ Defendants also contend that the trial court erred in refusing to give their proposed instruction No. 35 which relates to considering the complaint of a party as an admission. Admissions of a party opponent are admissible as substantive evidence. Udall, Arizona Law of Evidence § 177 (1960). However, where a party to an action seeks the benefit of a statement in a pleading of his adversary as an admission, most courts require that the statement in the pleading must be offered in evidence before use can be made of it as an admission, 29 Am.Jur.2d Evidence § 688, and verification is not a prerequisite to its admissibility. 29 Am.Jur.2d Evidence § 691.

In *Yaskin,* supra, the complaint was received in evidence and was considered as substantive evidence. In the instant case defendants never offered the complaint in evidence. Failure to offer the complaint thereby rendered an admission instruction on a parties' complaint unnecessary.

Defendants' next contention is that the trial court erred in forbidding them to refer to the complaint during their closing argument. A considerable portion of defendants' cross-examination of the plaintiff was directed toward the inconsistency between the complaint and plaintiff's testimony at trial. However, defendants were forbidden from arguing the inconsistency to the jury in closing argument because the court ruled as follows:

"THE COURT: [In] order to keep the record consistent you are not to refer to the Complaint in your argument.

You may make your record.

MR. JOHANSSON: Those parts that were read in the testimony?

* * * * * *

THE COURT: This may be grounds for error but to make the record consistent I am going to so rule."

■ Generally, wide latitude is allowed in discussing in argument to the jury facts supplied by evidence and inferences to be drawn therefrom. Beliak v. Plants, 93 Ariz. 266, 379 P.2d 976 (1963); Aguilar v. Carpenter, 1 Ariz.App. 36, 399 P.2d 124 (1965); Pelayo v. Bell, 13 Ariz. App. 418, 477 P.2d 537 (1970). In argument counsel may also comment on the credibility of an opposing party. Yoo Thun Lim v. Crespin, 100 Ariz. 80, 411 P. 2d 809 (1966); Aguilar v. Carpenter, supra.

■ Defendants had been allowed on cross-examination to refer to the complaint in an attempt to impeach the plaintiff. However, when it came time for argument to the jury, the court did not allow any reference to the complaint. The inconsistency between the complaint and plaintiff's testimony went to the heart of the alleged fraudulent transaction and also plaintiff's credibility, yet defendants were precluded from arguing this to the jury. We therefore hold that the trial court's ruling was erroneous because it severely limited the scope of defendants' argument and we cannot assume that such a ruling did not affect or influence the verdict.

Defendants also raise the question of whether or not the trial court erred in awarding plaintiff punitive damages where the jury did not find or award actual damages. Since this case is being remanded for a new trial on the grounds set forth above, the damage issue is likely to arise again. We therefore offer the following guidance.

The nature of this case is somewhat confusing.[2] Assuming this is an action for reformation, the question of whether or not a court sitting in equity can award punitive

2. Appellee contends that this is an equitable action for reformation of a contract. However, in light of plaintiff's testimony concerning the alleged fraudulent conduct of defendant Starkovich, this case appears to be one for specific performance.

damages arises.[3] This question has yet to be resolved in this jurisdiction. In view of the disposition taken herein, it is unnecessary for us to decide that question now.

■ However, assuming arguendo that a court sitting in equity does have the power to award punitive damages, under the facts of this case that power could not properly be exercised. It is well settled in Arizona that punitive damages cannot be awarded without a finding of actual damage, LaFrentz v. Gallagher, 105 Ariz. 255, 462 P.2d 804 (1969); Smith v. Don Sanderson Ford, Inc., 7 Ariz.App. 390, 439 P.2d 837 (1968), whether nominal or substantial. Barker v. James, 15 Ariz.App. 83, 486 P.2d 195 (1971). Therefore, the crucial question is—did plaintiff sustain any actual damage?

■ The term damages is most generally classified as compensation for actual injury and actual damages and compensatory damages are generally treated as synonymous, being defined as damages given as an equivalent for the injury done, or damages awarded to a person as compensation, indemnity or restitution for harm sustained. State v. Griswold, 8 Ariz.App. 361, 446 P.2d 467 (1968). Plaintiff contends that the declaratory judgment awarding him an additional forty percent interest in the joint venture is compensatory damage justifying punitive damages. We have found no authority supporting such a theory.

In Arizona, where punitive damages have been awarded the cases have one common factor—an award of actual monetary damages for the harm sustained. In this case plaintiff did not ask for nor did the jury award any such damages. In fact, plaintiff abandoned his count for an accounting. Consequently, there is nothing in the record showing plaintiff sustained any harm such as loss of profits. Until plaintiff shows actual injury and there is an award of actual damages as compensation for his harm, an award of punitive damages cannot be made.

For the foregoing reasons the judgment is vacated and the cause is remanded for a new trial.

HATHAWAY, C. J., and HOWARD, J., concur.

NOTE: This cause was decided by the Judges of Division Two as authorized by A.R.S. § 12–120(E).

3. This question is the subject of an annotation which discusses the different approaches taken by courts. See, Annot. Punitive Damages—Award by Equity, 48 A.L.R.2d 947.