529 P.2d 698

Robert L. STARKOVICH and Lois H. Starkovich, his wife; John Chopas and Claire M. Chopas, his wife, Individually and as co-partners dba Guardian Development and Sales Co., Appellants,

v.

Harry R. NOYE and Evelyn D. Noye, his wife, Appellees.

No. 11559–PR.

Supreme Court of Arizona, In Banc.

Dec. 13, 1974.

Rehearing Denied Jan. 14, 1975.

Lewis & Roca by John P. Frank, James P. Walsh, Filipe K. Johansson, Phoenix, for appellants.

Sheldon Mitchell, Neal T. Roberts, Phoenix, for appellees.

STRUCKMEYER, Justice.

Robert L. Starkovich and John Chopas, doing business as Guardian Development and Sales Company, have appealed a jury's verdict and a judgment in an action for declaratory judgment in favor of Harry Noye. The judgment reformed a joint venture agreement and awarded punitive damages for fraud. The Court of Appeals,

21 Ariz.App. 324, 519 P.2d 77 (1974) reversed. Opinion of the Court of Appeals vacated and judgment affirmed.

In 1965, Noye and Starkovich and Chopas orally agreed on a joint venture to construct a professional services building in Lake Havasu City, Arizona. After the completion of the building, a dispute arose concerning the percentage of ownership of each party. Noye claimed a 50% interest. Starkovich and Chopas claimed a 90% interest, with 10% for Noye. The 90–10 division was reflected in a written joint venture agreement signed at about the time the building was started.

As plaintiff, Noye brought this action for declaratory judgment, alleging in a complaint signed only by his lawyer that Starkovich fraudulently induced his wife and himself to sign the written agreement by placing a stack of papers in front of them and having them sign. Later, in a deposition, plaintiff testified that at the signing he had read the papers, that they reflected the 50% interest to which he was entitled and that the 90–10 percentages could only have been caused by the substitution of a page after he had signed the agreement. At the trial, plaintiff testified again without objection that he had "glanced" at the percentage arrangements, that they were at the time of the signing 50–50, and that the page which he had read when he signed must have been removed and another page reflecting the 90–10 percentages substituted in its place.

The defendants first urge that the trial court erred in refusing to permit plaintiff's impeachment during cross-examination by showing an asserted variance between the allegations of the complaint and his testimony on direct examination. Similarly, they urge error in the court's directing the defendants not to refer to the allegations of the complaint during arguments to the jury, in refusing an instruction on the pleadings of a party as admissions, in denying their motion to strike plaintiff's testimony and denying their motion for a directed verdict.

It is a rule to which we find no dissent that in the absence of a proper objection to the introduction of evidence on the ground that it is inadmissible under the pleadings because of a variance, the variance will not be considered as material, Thompson v. Hickman, 89 Cal.App.2d 356, 200 P.2d 893 (1949), or fatal, Craft v. Stumpf, 115 Colo. 181, 170 P.2d 779 (1946), and the party failing to make an objection to a variance at the time the evidence is introduced will not be permitted thereafter to take advantage of it.

"It has long been the rule that any variance between pleading and proof is waived if the opposing party does not make timely objection. In Woodard v. Timms, 113 Kan. 413, 215 P. 456 [1923], it is stated:

'A variance between pleading and proof is waived, when no objection thereto is clearly and specifically raised at the time the evidence is presented in the trial court.'"

Forster v. Fink, 195 Kan. 488, 492, 407 P.2d 523, 527 (1965).

And see, e. g., McDonough v. Chu Chew Shong, 21 Cal.App.2d 257, 68 P.2d 976 (1937); Carey v. Lafferty, 59 Idaho 578, 86 P.2d 168 (1938); Albert M. Greenfield & Co. v. Philadelphia Workingmen's Saving Loan & Bldg. Ass'n, 162 Pa.Super. 350, 57 A.2d 435 (1948).

It is also the rule that the admission of evidence without objection will enlarge the pleadings and render it proper for the trial court to treat the pleadings as though amended so as to conform to the proof. Gilliland v. Rodriquez, 77 Ariz. 163, 268 P.2d 334 (1954). And see Schreppel v. Campbell Sixty-Six Express, Inc., 201 Kan. 448, 441 P.2d 881 (1968); Hursh v. Mon-O-Co. Oil Corp., 139 Mont. 302, 363 P.2d 485 (1961); Home Plumbing & Contracting Co. v. Pruitt, 70 N.M. 182, 372 P.2d 378 (1962); Gorham v. Arons, 306 N.Y. 782, 118 N.E.2d 600 (1954); Ketel v. Hovick, 47 Wash.2d 368, 287 P.2d 739 (1955); Jones v. Clark, Wyo., 418 P.2d 792 (1966).

The principles enunciated in the cited authorities are so well settled that they have often been adopted into rules of practice and procedure. In Arizona, Rule 15(b), Rules of Civil Procedure, 16 A.R.S. expressly provides:

"When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings. Such amendment of the pleadings as may be necessary to cause them to conform to the evidence and to raise these issues may be made upon motion of any party at any time, even after judgment, but failure so to amend does not affect the result of the trial of these issues. * * *."

In Electrical Advertising, Inc. v. Sakato, 94 Ariz. 68, 381 P.2d 755 (1963), we construed Rule 15(b), holding:

"When evidence is presented at trial which presents a new or different theory from that alleged in the pleadings, *and the adverse party does not object to the introduction thereof*, that issue is then tried by implied consent. Beckwith v. Clevenger Realty Co., 89 Ariz. 239, 360 P.2d 596 (1961); Leigh v. Swartz, 74 Ariz. 108, 245 P.2d 262 (1952). Failure to formally amend the pleadings will not affect a judgment based upon competent evidence. If an amendment to conform the pleadings to the proof should have been made, an appellate court will presume that it was so made to support the judgment." 94 Ariz. at 71, 381 P.2d at 756–757. (Emphasis supplied)

And *see* State v. Barnum, 58 Ariz. 221, 118 P.2d 1097 (1941).

The foregoing disposes of the defendants' claim that the trial court erred in denying defendants' motion to strike the plaintiff's testimony and their motion for a directed verdict.

■ The principle controlling the question of whether the court should have treated the pleadings of the plaintiff as an admission is controlled by Buehman v. Smelker, 50 Ariz. 18, 68 P.2d 946 (1937).

There we held that statements in the pleadings which have been shown to be those of a party or to have been approved by him are admissible against him but that a party is not bound without a preliminary showing that the statements emanated from him or were known or approved by him.

In the instant case, the plaintiff was asked this question on cross-examination and gave this answer:

"Q. And did you read [the complaint] at about, on or about the time it was filed?

A. Yes."

The question was duplicitous and consequently the answer did not establish that the plaintiff was aware of the contents of the complaint *prior* to its filing.

Later, on cross-examination, in referring to the paragraph containing the allegations that plaintiff was deceived by the subterfuge of including the joint venture agreement in a pile of documents placed in front of plaintiff for signature, this question was asked:

"Q. Do you recall now this paragraph that I just read, Harry? * * *

A. I don't remember it."

Here, again, no attempt was made to establish whether plaintiff had read the complaint prior to filing.

We therefore are of the opinion that the defendants did not by this limited cross-examination prove that plaintiff was aware of the statements contained in the complaint at the time of its filing, and we hold that the trial court did not err in its other rulings on the defendants' motions directed to the purported variance in plaintiff's testimony.

■ Defendants next question whether a court sitting in equity can award punitive damages, arguing that in an action for declaratory judgment where a contract is ordered reformed the reformation cannot be construed as compensatory damages sufficient to satisfy the requirement that actual damages must be awarded in order to support punitive damages. We disagree.

Arizona has long abolished the distinction between legal and equitable action, *see* § 425 R.S.1913. In McRae v. Lois Grunow Memorial Clinic, 40 Ariz. 496, 14 P.2d 478 (1932), we said:

"It should be remembered that forms of action are abolished under our judicial system. They are civil actions and are to be stated without distinction between actions at law and in equity and also without distinction as to the nature of the relief demanded. Section 3746, Revised Code of 1928. And it is provided that judgments shall conform to the pleadings, the nature of the case proved, and the verdict, if any, *and shall give all the relief either in law or equity to which a party may show himself entitled.*" 40 Ariz. at 510, 14 P.2d at 483. (Emphasis supplied)

Seven years after this pronouncement, the policy of granting complete relief was reaffirmed by the adoption of the following language in Rule 54(d) of the Rules of Civil Procedure:

"Except as to a party against whom a judgment is entered by default, every final judgment shall grant the relief to which the party in whose favor it is rendered is entitled, even if the party has not demanded such relief in his pleadings."

The same policy is reflected in the Uniform Declaratory Judgment Act, which Arizona has adopted. Section 12–1838 reads in its relevant part:

"Further relief based on a declaratory judgment or decree may be granted whenever necessary or proper."

The Uniform Declaratory Judgment Act, McRae and Rule 54(d) seek to avoid multiplicity of actions by providing one form of action and allowing a single court to grant all suitable relief. As Justice Cardozo said in Susquehanna S.S. Co. v. Andersen & Co., 239 N.Y. 285, 294, 146 N.E. 381, 384 (1925):

"The whole body of principles, whether of law or of equity, bearing on the case, becomes the reservoir to be drawn upon by the court in enlightening its judgment."

In New York, the state which first abolished the distinctions between law and equity, the Court of Appeals, in I.H.P. Corp. v. 210 Central Park South Corp., 12 N.Y.2d 329, 332, 239 N.Y.S.2d 547, 548, 189 N.E.2d 812, 813 (1963), said:

"We have one court of general jurisdiction which administers *all* of New York law."

The New York court expressly disapproved the argument that equitable relief could not support an award for punitive damages, commenting that such a policy:

"* * * presupposes a court intrinsically limited to granting remedies solely equitable in historical origin. There is no such court in this State."

Likewise, there is no such court in the State of Arizona. There is but a single form of action and the Superior Court is empowered to grant any relief which flows as a consequence of the injury.

The appellants argue that the judgment reforming the joint venture agreement did not constitute compensatory damages, a requisite for punitive damages. They rely on La Frentz v. Gallagher, 105 Ariz. 255, 462 P.2d 804 (1970) and Smith v. Don Sanderson Ford, Inc., 7 Ariz.App. 390, 439 P.2d 837 (1968), as authority for the proposition that punitive damages will be denied where equitable relief is claimed. However, those cases are readily distinguishable in that punitive damages were not allowed because the plaintiffs were denied *any* remedy, actual damages, on their asserted claims for relief.

In Idaho, the Supreme Court, in defining compensatory damages, held:

"We prefer to adhere to the rule which gives the term [damages] its broader significance, as including either pecuniary loss *or the alteration of one's position to his prejudice.*" Nab v. Hills, 92 Idaho 877, 883, 452 P.2d 981, 987 (1969). Dobbs, in his treatise on Remedies at page 210, made this comment concerning the

rule necessitating a compensatory damage award before punitive damages can be awarded:

"If the rule means only that the plaintiff must have a cause of action before he can recover punitive damages, it states sound law in an obscure way; if it means more, it introduces complications *that serve no purpose.*"

Pomeroy says:

"Strictly speaking, the remedy given is no part of the action, but is the result thereof; it is the object for which the action is * * * directed." Pomeroy, Code Remedies, § 9, p. 13.

We believe there is no logical reason why a judgment awarding an additional forty percent on a $400,000 building should not be considered as relief sufficient to support punitive damages. Nor is there a reason in logic to deny a complete remedy for a fraud. Noye, by a favorable jury's verdict, established a claim for relief and he was entitled to all the relief which was justified by his claim.

Defendants complain of the exclusion by the trial court of certain testimony of their accountant, William Bigham. This complaint arises out of the fact that before trial, as part of the discovery process, the plaintiff submitted certain interrogatories to the defendants seeking information relating to the defendants' assertion that they had made large financial contributions to the joint venture which they would not have made had their interests been equal. At the trial, the plaintiff called a certified public accountant who testified as to his analysis of the defendants' answers to the interrogatories. From the defendants' answers he also prepared a chart admitted in evidence as Exhibit 50. The chart and the witness' testimony tended to show that the defendants did not make the cash contributions to the joint venture which they claimed they had made.

It is the defendants' position that the interrogatories sought information that was incomplete and consequently the answers distorted the true picture of the joint venture. Their accountant, Bigham, was called purportedly to rebut plaintiffs' testimony. Bigham testified that the information contained on Exhibit 50 adequately reflected the affairs of the defendants and that if he had prepared Exhibit 50 considering only the answers to the interrogatories, he possibly would have prepared it in the same way as the plaintiffs' accountant.

Bigham further testified that he had prepared income tax returns for 1965, for the Guardian Development Company and for Starkovich and Chopas both *individually and as a partnership,* and that he had made certain notes from information which he had received. Defendants offered in evidence a photostatic copy of a note made by Bigham, dated December 31, 1965. It reads:

"Guardian Dev. Co.
Notes
12–31–65
(or less)

Early in 1966, ⅓/ of one project of Guardian Dev was sold. The buyer is to pick up his percentage of costs and overhead, as billed to him by Guardian Development Co.

In Dec 1965, the buyer paid $1,500 for the initial deposit. This $1,500 did not represent ⅓ of the project costs to date."

Defendants urge that Bigham's notes and memoranda are business records and therefore admissible as exceptions to the hearsay rule, relying on Rule 44(q), Arizona Rules of Civil Procedure.[1] But we think not.

1. "44(q) Proof of business record; definition; as evidence
      *      *      *      *      *
2. Any record of an act, condition or event, shall, insofar as relevant, be competent evidence if the custodian or other qualified witness testifies to its identity and the mode of its preparation, and if it was made *in the regular course of business,* at or near the time of the act, condition or event, and if, in the opinion of the court, the sources of information, method and time of preparation were such as to justify its admission." (Emphasis supplied)

While Rule 44(q) was adopted from the Uniform Business Records as Evidence Act, Lenslite Co. v. Zocher, 95 Ariz. 208, 388 P.2d 421 (1964), and its purpose was to liberalize the rules of admitting records into evidence, there is still the express requirement that a record must be made "in the regular course of business" in order to avoid the claim of hearsay. Under a similar, although not identical, statute, see 28 U.S.C. § 1732, it has been held that income tax returns are not admissible as business records. Standard Oil Company of California v. Moore, 251 F.2d 188, 222 (9 Cir. 1958). They are not made in furtherance of the taxpayer's business, but under the sanction of a federal statute at the behest of the Director of Internal Revenue and are only incidental to the taxpayer's business. Memoranda which are not typical of entries made systematically or as a matter of routine to record events or occurrences, to reflect transactions with others, or to provide internal controls are not in the class of records made "in the regular course of business." Palmer v. Hoffman, 318 U.S. 109, 63 S.Ct. 477, 87 L.Ed. 645, 144 A.L.R. 719 (1943).

The notes of Bigham were not made systematically or routinely by the defendants to reflect their business transactions with others, although they may have been made routinely by Bigham in his business of accounting. Since income tax returns are not themselves admissible as business records, supportive memoranda or notes can have no greater evidentiary dignity and must be held to be self-serving hearsay.

The defendants complain of the trial court's failure to order an accounting between the parties. The asserted error is based upon the fact that the plaintiff's complaint stated two claims for relief, the first a claim based upon fraud and, second, a claim that the defendants during the course of construction of the building wrongfully converted certain monies in violation of the joint venture agreement between the parties. Under Rule 8(f), Rules of Civil Procedure, 16 A.R.S., a party may state as many separate claims as he has regardless of consistency. At the conclusion of the trial, the plaintiff abandoned his claim for the conversion of monies in violation of the joint venture agreement and an accounting thereof.

The defendants urge that the court below should not have permitted the plaintiff to abandon the claim for an accounting since, as a result of the failure to order an accounting, the plaintiff was given a fifty percent interest in the building without any set-offs for the charges which the defendants had borne in the operation of the building since the time of its completion. They urge that the law does not require them to separately request an accounting where plaintiff has already asked for one in his pleadings, relying on Birt v. Birt, 102 Ariz. 374, 430 P.2d 136 (1967), as authority for their position.

We think, however, that Birt v. Birt does not support the defendants' position. That case was an action to impose a constructive trust upon proceeds of the sale of stock, and upon a determination of the trust, for an account of the proceeds. A trust was imposed and an accounting was had. We held that in the accounting it was not necessary for a defendant to plead a set-off or counterclaim, quoting from Miller v. Joannes, 262 Wis. 425, 55 N.W.2d 375 (1952):

"'In such an action the complaint implies an offer by the plaintiff to pay any balance that may be due the defendant. The complaint itself raises the issue.'" 102 Ariz. at 375, 430 P.2d at 137.

Birt v. Birt does not hold that a defendant can compel an accounting where he does not state a claim for affirmative relief by way of a valid counterclaim.

Finally, defendants complain that the trial court erred in refusing to give certain instructions proposed by them and in giving certain instructions proposed by the plaintiff.

They complain that the plaintiff's instruction No. 9 was inconsistent with his

instruction No. 11. Plaintiff's instruction No. 9 was that when a party intentionally or by design creates a false impression in order to mislead another or to entrap or cheat him or to obtain an undue advantage over him, there is a positive fraud. Plaintiff's instruction No. 11 defined the nine essential elements of fraud which we have repeatedly held must be present. *See, e. g.,* Nielson v. Flashberg, 101 Ariz. 335, 419 P.2d 514 (1966).

Instruction No. 9 is consistent with the fourth element of the court's instruction No. 11 that:

"When the misrepresentation was made, the defendant knew it was false."

The written contract was a promise by the defendants to share the building on an equal percentage basis. The jury could have concluded that this promise was a misrepresentation and the defendants knew at the time of signing it was false from the facts that the agreement as prepared by the defendants at the time of signing showed an equal interest, that the defendants after the signing picked up all the copies and preliminary drafts, supposedly to have them notarized, that Noye was never delivered a copy of the agreement after notarization, and that Noye was told the copies were to be notarized at Lake Havasu but instead they were notarized by the defendants' secretary in Phoenix. In short, the jury could have found that the promise contained in the written agreement was never intended to be kept.

We said in Employer's Liability Assurance Corporation v. Lunt, 82 Ariz. 320, 324–325, 313 P.2d 393, 396 (1957):

"In this jurisdiction it is settled that a fraud may be perpetrated by the giving of a promise to perform a future act made with the present intention not to perform. * * *

\* \* \* \* \* \*

The gist of the fraud here complained of is not in the breach of the agreement to perform, but in the implied representation of an existing intent to perform where such intent is, in fact, nonexistent, * * *."

The gist of the fraud complained of here is not in the breach of the agreement to perform but the implied representation of the intent to perform pursuant to the written, signed agreement where such intent was, in fact nonexistent. We therefore hold the instructions were not incompatible and were unlikely to mislead the jury.

The defendants' other complaints concerning instructions are without merit or have so little merit as to have had no influence on the jury's verdict, and need little comment. For example, the complaint of the court's failure to give defendants' proposed instruction No. 9 is obviously without merit. It was addressed to the theory of the plaintiff's case as set forth in his complaint. This theory was abandoned by his testimony concerning the probable substitution of the page containing the respective interests of the parties.

Judgment affirmed.

HAYS, C. J., and LOCKWOOD and HOLOHAN, JJ., concur.

Note: Vice Chief Justice JAMES DUKE CAMERON did not participate in the determination of this matter.