NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS

## DIVISION ONE

---

JAMELLE A., *Appellant,*

*v.*

DEPARTMENT OF CHILD SAFETY, M.A., *Appellees.*

No. 1 CA-JV 20-0411
FILED 5-20-2021

---

Appeal from the Superior Court in Maricopa County
No. JD533495
The Honorable Jeffrey A. Rueter, Judge

**AFFIRMED**

---

COUNSEL

Vierling Law Offices, Phoenix
By Thomas A. Vierling
*Counsel for Appellant*

Arizona Attorney General's Office, Tucson
By Autumn L. Spritzer
*Counsel for Appellee Department of Child Safety*

---

## MEMORANDUM DECISION

Judge Maria Elena Cruz delivered the decision of the Court, in which Presiding Judge Jennifer M. Perkins and Judge Randall M. Howe joined.

---

**C R U Z**, Judge:

**¶1** Jamelle A. ("Father") appeals from the superior court's order adjudicating his son, M.A., a dependent child. Because M.A. is eligible for enrollment in the Hopi Tribe ("the Tribe"), this matter is subject to the Indian Child Welfare Act ("ICWA"), 25 United States Code sections 1901 to 1963. For the following reasons, we affirm.

### FACTUAL AND PROCEDURAL HISTORY

**¶2** M.A. was born in January 2016. When M.A. was eight months old, Father gained sole custody of him. M.A.'s mother, Jessica S., has not been involved in his life since that time.[1]

**¶3** In 2018 Father went to prison. Two consecutive relatives had guardianship of M.A. while Father was incarcerated. Father was released from prison in March 2020, and he petitioned to dissolve the guardianship. The superior court ordered DCS to investigate and report whether M.A. would be safe in Father's care.

**¶4** DCS investigated and reported it would be unsafe to return M.A. to Father. At a hearing in July 2020, the superior court ordered DCS to file a dependency petition. DCS filed a dependency petition alleging neglect due to domestic violence and Father's substance abuse and lack of stable housing. DCS alleged that Father had been aggressive and unwilling to cooperate with its investigation or its request that he submit to a drug test.

**¶5** DCS thereafter requested Father to participate in urinalysis testing at Physician Services, Inc. ("PSI"), supervised visitation, substance-abuse treatment, domestic violence classes, counseling with a domestic violence component, and parent-aide services. In October and November 2020, Father failed to call in to PSI twenty times and missed two tests. He

---

[1] Jessica S. entered a no contest plea regarding the allegations in the dependency petition; she is not a party to this appeal.

tested positive for THC six times in August, September, and November. Although he had a medical marijuana card, Father did not have a plan for safely using marijuana and an understanding of how marijuana could impact his parenting. Father completed an intake at TERROS but TERROS closed out the referral because it did not recommend substance abuse treatment. By the time of the dependency adjudication hearing in December 2020, Father had been participating in counseling for about a month but had not signed a release of information to allow DCS to look at the records from those sessions. In addition, Father had completed a four-hour domestic violence class and several parenting classes. Father participated in supervised visitation with M.A. but ended visits early on multiple occasions. Less than a month before the hearing, Father completed an intake and began working with a parent aide to improve his parenting skills.

¶6 At the dependency adjudication hearing the DCS case manager testified that despite the services Father had completed so far, domestic violence and anger issues continued to be a safety concern because of Father's behaviors as reported by service providers. For example, at a visit with M.A. in October 2020, Father yelled at the case aide after she told him to stop combing M.A.'s hair because it was making him cry. Father asked M.A. if he was okay and even after M.A. said "no" Father continued combing M.A.'s hair. Father lost control and began yelling that he could do what he liked with his son. The case aide called her supervisor, who overheard Father yelling at the case aide and told her to stop the visit. Father also reportedly lost his temper and yelled at a PSI employee. Despite these incidents, the case manager believed Father could overcome that safety concern if he made progress in counseling. In addition, DCS was still concerned about Father's marijuana use because there was no safety plan in place regarding Father's use of marijuana with M.A. in the home. The case manager explained:

> [E]ven though medical marijuana is allowed . . . when a parent is under the influence it's still considered medicating . . . it still impacts . . . parenting abilities. And it's [DCS's] preference . . . that we ensure that the parents can still use the medicine that they need, but that the child has a fully non-medicated, non-under the influence adult available to supervise and take care of the child's needs as well.

The Tribe's ICWA expert opined that returning M.A. to Father would not be safe until he participated in additional services, and the Tribe proposed that an in-home dependency was appropriate.

¶7    After the hearing, the superior court adjudicated M.A. dependent. The court found DCS did not prove its allegation that M.A. was dependent on the grounds that Father was unable to parent due to domestic violence and unstable housing. However, the court found DCS had proved by a preponderance of the evidence that M.A. was dependent because Father was unable or unwilling to provide M.A. with proper and effective parental control based on his marijuana use, his anger control issues, and a deficiency in his parenting skills.

¶8    The court amended the allegations set forth in the dependency petition to conform to the evidence presented pursuant to Arizona Rule of Juvenile Procedure ("Rule") 55(D)(3) and Arizona Rule of Civil Procedure ("Civil Rule") 15(b). The court granted Father's Rule 59 motion for return of M.A., noting that Father was engaged in services designed to address the safety concerns that resulted in the dependency. The court ordered DCS to (1) make an immediate referral for a family reunification team, (2) complete a safety plan regarding Father's medical marijuana, and (3) complete an inspection of Father's home so it could identify and rectify any safety risks.

¶9    Father timely appealed, and we have jurisdiction pursuant to Arizona Revised Statutes ("A.R.S.") sections 8-235(A), 12-2101(A), and 12-120.21(A).

## DISCUSSION

¶10    Father argues that "no evidence" supported the dependency, the safety risks found by the court were mere "concerns," and the evidence showed he could safely parent M.A. We disagree.

¶11    We review the superior court's order adjudicating a child dependent for an abuse of discretion. *Pima Cnty. Dependency Action No. 93511*, 154 Ariz. 543, 546 (App. 1987). We view the evidence in the light most favorable to sustaining the superior court's findings and generally will not reverse a dependency adjudication unless no reasonable evidence supports it. *Willie G. v. Ariz. Dep't of Econ. Sec.*, 211 Ariz. 231, 235, ¶ 21 (App. 2005). The superior court "must determine whether a child is dependent based upon the circumstances existing at the time of the adjudication hearing." *Shella H. v. Dep't of Child Safety*, 239 Ariz. 47, 50, ¶ 12 (App. 2016). The primary consideration in a dependency proceeding is the best interests of the child. *Michael M. v. Ariz. Dep't of Econ. Sec.*, 217 Ariz. 230, 234, ¶ 17 (App. 2007).

¶12    Section 8-201(15)(a) provides in relevant part that a

"[d]ependent child" is a child who is adjudicated by the superior court to be "[i]n need of proper and effective parental care and control and who . . . has no parent or guardian willing to exercise or capable of exercising such care and control." A.R.S. § 8-201(15)(a)(i).

¶13 Here, the superior court found that Father was unable or unwilling to provide M.A. with proper and effective care and control. Reasonable evidence supported that determination. As the court noted, Father had been incarcerated for approximately two years of four-year-old M.A.'s life, and the evidence reflected concerns about Father's parenting skills and anger control issues despite his initial participation in services. In addition, Father and his live-in girlfriend both had medical marijuana cards and used marijuana without a safety plan for how marijuana would be stored and how parenting would be handled when Father was under the influence of marijuana.

¶14 The fact that the superior court granted Father's motion for return of M.A. does not mean insufficient evidence supported the dependency, as Father suggests. The court's Rule 59 finding that returning M.A. to Father's care would not create a substantial risk of harm to M.A. was based on the facts that (1) Father was participating in services in the context of this dependency, and (2) the court put into place protective orders to mitigate the risk of harm to M.A. before his return to Father's care, including ordering DCS to inspect Father's home to identify and rectify any safety risks and to create a safety plan regarding medical marijuana.

¶15 Father next argues that the superior court erred in amending the dependency petition to conform to the evidence presented at the dependency adjudication hearing instead of dismissing the petition. He argues the court improperly adjudicated M.A. dependent based on grounds not alleged in the petition. Father notes the court amended the petition to conform to the evidence on its own motion and relies on *Carolina H. v. Arizona Department of Economic Security*, 232 Ariz. 569 (App. 2013), to argue the superior court lacked discretion to amend the petition to include anger issues and lack of parenting skills. We review the superior court's decision whether to amend a pleading for an abuse of discretion. *Maricopa Cnty. Juv. Action No. JS-501904*, 180 Ariz. 348, 355 (App. 1994). "Due process requires notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and to afford them an opportunity to present their objections." *Id.* (citation and internal quotation omitted). "[N]otice and substantial prejudice to the opposing party are critical factors in determining whether an amendment should be granted." *Id.* (citation and internal quotation omitted).

**¶16** Under A.R.S. § 8-844(C)(2), the superior court must dismiss a dependency petition if it "[d]oes not find by a preponderance of the evidence that the allegations contained in the petition are true." Civil Rule 15(b), which is incorporated by Rule 55(D)(3), concerns amendments to pleadings made during and after trial. Civil Rule 15(b)(1) applies when "at trial, a party objects that evidence is not within the issues raised in the pleadings." In that case, the court may permit the pleadings to be amended and should freely do so if it would "aid in presenting the merits and the objecting party fails to satisfy the court that the evidence would unfairly prejudice that party's claim or defense on the merits." Ariz. R. Civ. P. 15(b)(1). Civil Rule 15(b)(2) applies to issues tried by consent, and provides:

> When an issue not raised by the pleadings is tried by the parties' express or implied consent, it must be treated in all respects as if it had been raised in the pleadings. A party may move—at any time, even after judgment—to amend the pleadings to conform to the evidence and to raise an unpleaded issue. But failure to amend does not affect the result of the trial of that issue.

Ariz. R. Civ. P. 15(b)(2). "A variance between pleading and proof is waived, when no objection thereto is clearly and specifically raised . . . in the trial court." *Starkovich v. Noye*, 111 Ariz. 347, 349 (1974) (citation and internal quotation omitted). Here, Father made no objection in the superior court that the evidence at the termination adjudication hearing was not within the issues raised in the dependency petition. DCS presented evidence that Father had anger issues and had treated M.A. inappropriately and yelled during the October visit, as well as testimony from the DCS case manager that Father still needed counseling to address his anger and needed to continue to work with a parent aide to enhance his parenting skills. The superior court made specific findings of fact in support of its conclusion that M.A. was dependent because Father was unwilling or unable to provide proper and effective parental control. Specifically, the court found that Father's anger issues, parenting skills, and marijuana usage without a safety plan were still a concern at the time of the dependency adjudication hearing. *See Francine C. v. Dep't of Child Safety*, 249 Ariz. 289, 295, ¶ 12 (App. 2020) (superior court must make specific findings of fact in support of a finding of dependency); *Shella H.*, 239 Ariz. at 50, ¶ 12 (superior court must determine whether a child is dependent based on the circumstances existing at the adjudication hearing).

**¶17** Although the court found that DCS had not met its burden of proof regarding the allegations that M.A. was dependent because of

domestic violence and unstable housing, the court did not reject the remainder of the allegations in the petition. Besides its allegations concerning domestic violence and unstable housing, DCS alleged in the petition that Father "presented as aggressive and unwilling to cooperate with the DCS investigation," and that he used marijuana at home. Because the superior court found some of the allegations in the dependency petition to be true, Father was not prejudiced and the superior court was not required to dismiss the petition. *Cf. Carolina H.*, 232 Ariz. at 571-72, ¶¶ 8-12 (reversing the superior court's dependency finding after the court found a dependency based solely on a theory not argued or raised at trial and unrelated to the allegations in the dependency petition—that there was a "substantial disconnect" between the mother and her child).

## CONCLUSION

**¶18** For the foregoing reasons, we affirm the superior court's decision finding M.A. dependent as to Father.



AMY M. WOOD • Clerk of the Court
FILED: AA